In the Matter of The Arbitration of Controversies Between Frank G. BARRETT, Bertram A. Powers and James A. McCann, Union-Appointed Trustees of Typo-Publishers' Welfare Fund, Petitioners-Appellees,

v.

A. V. MILLER, William Mapel and C. Raymond Hulsart, Association-Appointed Trustees of Typo-Publishers' Welfare Fund, Respondents-Appellants.

No. 19, Docket 25484.

United States Court of Appeals Second Circuit.

Argued Oct. 8, 1959.

Decided March 28, 1960.

Sheehan & Harold, New York City, for petitioners-appellees.

Townley, Updike, Carter & Rodgers, New York City (John R. Schoemer, Jr., New York City, of counsel), for respondents-appellants.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge.

The present case relates to the management of a "welfare fund" created pursuant to a collective bargaining agreement between Publishers' Association of New York City, representing the publishers of the principal daily newspapers in New York City, and New York Typographical Union Number 6, representing employees in the composing rooms of these newspapers. The terms under which the fund is to be administered are

set forth in a trust agreement dated February 27, 1953. The agreement closely follows the requirements of Section 302(c) (5) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 186(c) (5). It provides, *inter alia*, that management of the fund, which consists exclusively of annual contributions by the publishers, shall be in the hands of six trustees, of whom three are to be appointed by the Association and three by the Union. The fund was initially established in 1953. The welfare benefits payable under the trust agreement have been provided for by the purchase of contracts from insurance companies, the premiums therefor being paid from the fund. In 1957 the three Union trustees proposed that the trustees investigate the possibility of adopting a self-insurance program rather than continuing to pay premiums to independent insurance companies. The trustees authorized a consulting firm to make the investigation. The firm reported, stating that, as to many of the benefits the fund was intended to provide, self-insurance would be feasible and would achieve a small annual saving. At a meeting on November 19, 1957 the Union trustees proposed that the fund become a self-insurer in those areas in which the report had indicated such a program would be feasible. The Association trustees voted against the proposal. A deadlock thereby having been created the Union trustees, pursuant to paragraph 10.E. of the trust agreement, petitioned the district court for the appointment of an impartial umpire to resolve the deadlock, a power expressly conferred upon the district court by Section 302(c) (5) (B) of the Labor Management Relations Act.[1] The court below, Bryan, J., 166 F.Supp. 929, granted the petition, and the Association trustees have appealed.

Appellants' argument is quite simple. The parties agree that paragraph 10.E. of the trust agreement should be regarded as an arbitration clause. The parties further agree that if an umpire were appointed he would have only those powers conferred in paragraph 10.E. Paragraph 10.E. gives the umpire power over " * * * a deadlock upon any question coming before the Trustees for decision." Appellants contend that since the scope of the trustees' power is limited to the functions provided for in the trust agreement, the above-quoted language should be construed so as to limit the umpire's power to the same functions. Appellants

---

[1]. Section 302(c) (5) (B) provides that a trust agreement, in order for the trust to qualify under Section 302(c) (5), must contain the following provisions relative to the resolution of deadlocked questions: "* * * in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, * * * * *"

The trust agreement in the present case follows the requirements of Section 302 (c) (5) (B). Paragraph 10.E. reads as follows:

"E. In the event of a deadlock upon any question coming before the Trustees for decision, the Trustees shall agree on an Impartial Umpire, who shall sit with the Trustees as a committee to decide such question and whose decision, in the event of such deadlock, shall be final and binding. *Upon the failure of the Trustees to agree upon such Impartial Umpire* within seven days after said deadlock, the Impartial Umpire to decide such question shall, upon petition of either the Association-appointed Trustees or the Union-appointed Trustees, be appointed by the District Court of the United States for the District where the Fund has its principal office." (Italics supplied.)

The trust agreement employs the language: "deadlock upon any question coming before the Trustees for decision." The statutory language is: "deadlock on the administration of such fund." Appellees argue that by this difference of expression the parties intended an area of arbitrability greater than that required by Section 302(c) (5) (B). We, however, believe that the phrases have identical import.

maintain that the proposal for self-insurance was beyond the scope of the trust agreement and that, since there could be no issue for the umpire to arbitrate, they conclude that the district court erred in granting appellees' petition that an umpire be appointed.

■ In Local No. 149 of American Federation of Technical Engineers v. General Electric Co., 1 Cir., 1957, 250 F.2d 922, 927, certiorari denied 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813, it was aptly said by Judge Magruder that when a party to a collective bargaining agreement seeks a federal decree compelling arbitration under § 301 of the Labor Management Relations Act, the court "has the inescapable obligation to determine as a preliminary matter that the defendant has contracted to refer such issue to arbitration, and has broken this promise." See also Brass and Copper Workers Federal Labor Union, etc. v. American Brass Co., 7 Cir., 1959, 272 F.2d 849, 853. The parties have pointed out no reason why a district court should restrict itself more severely when asked to appoint an umpire under § 302(c) (5). The promise of the parties was to agree on an umpire "in the event of a deadlock upon any question coming before the Trustees for decision." Decision implies choice; in no real sense does a question come before the trustees for decision if the answer sought by the proponent would require action plainly beyond the powers conferred upon the trustees. In other words, while a trustee petitioning for the appointment of an umpire need not demonstrate that his interpretation that the issue was one the trustees could decide is the correct one, see Engineers Association v. Sperry Gyroscope Co., 2 Cir., 1957, 251 F.2d 133, 137, certiorari denied 1958, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762, he must at least establish that it is a possible one. As Chief Judge Murrah suggested in Local 1912, International Ass'n of Machinists v. United States Potash Co., 10 Cir., 1959, 270 F.2d 496, 498, certiorari denied, 80 S.Ct. 1609, a court need not order arbitration when it is prepared to say "with positive assurance that the contract is not susceptible to an interpretation to cover the asserted dispute."

■ Having examined the agreement, the relevant portions of which are set forth in the footnote,[2] we conclude that

2. The provisions of the trust agreement pertinent to the inquiry before us are found in Sections 3–8 thereof, quoted here. The italicized language bears directly on the issue before us.

Powers and Duties of Trustees

3. The Trustees, in their own names as Trustees, shall receive and accept from Contributing Employers, as hereinafter defined, contributions for the benefit of the Contributing Employers' employees, in accordance with the provisions of the collective bargaining agreement between the Union and each Contributing Employer or its representative, *for the purpose of providing and maintaining group life, accidental death and dismemberment insurance, accident and health insurance, or other forms or policies of insurance as may be determined by the Trustees to be advisable.*

With respect to any of the foregoing, the Trustees shall be authorized and empowered to make determinations, *subject to the provisions of such policies,* with respect to such matters as waiting periods, definition of full-time employment and such other provisions concerning eligibility as the Trustees may deem appropriate, including members of the employees' families who might be eligible for benefits *under such policy or policies entered into by the Trustees.* To the extent practicable, such determinations shall be uniformly made and applied by the Trustees with respect to all Contributing Employers and all employees covered by such policies of insurance.

*The Trustees shall agree with each insurance carrier upon provisions to be contained in each policy, rider, endorsement or amendment. All the rights and privileges granted to the policy-holder by a policy or allowed by the insurance carrier shall be vested in the Trustees and they may take any action with respect to each policy or the insurance provided thereunder as may be permitted by the insurance carrier or by the terms of such policy. The Trustees may agree with each insurance carrier that any one or more persons designated by them, which may include one or more of the Trustees, shall sign drafts upon the insurance car-*

appellees' interpretation that self-insurance is a permissible alternative to the purchase of insurance policies from independent insurance companies is not

rier in the amounts approved for the payment of claims under a policy, provided that no one person may be authorized to sign drafts in an amount larger than $200.00 or such greater or lesser amount as the Trustees may from time to time fix.

If the Trustees are of the opinion that economies can thereby be effected or the administration of the Fund improved, thereby making possible greater benefits for the covered employees and to the extent possible for members of their families, the Trustees may agree, to the extent permitted by law, with the trustees of another fund or funds established by contributions from Association members to consolidate the administration of this Fund and to purchase group insurance in common with such other fund or funds.

4. The Trustees shall deposit in the name of the Trust Fund all monies received by them in such bank or banks as they may select for that purpose, and may invest and reinvest such funds as, in their sole discretion, they determine are not required for current expenditures, in such securities as may be legal from time to time for the investment of trust funds under the laws of the State of New York. The Trustees may pay over all or any part of the monies received by them or comprising part of the Fund to a bank or trust company for investment and administration on such terms and conditions as the Trustees, in their sole discretion, may deem advisable.

5. The Trustees shall use and apply the Trust Fund for the following purposes, and none other:

A. To pay or provide for the payment of all reasonable and necessary expenses of receiving said contributions and administering the affairs of the Trust, including the employment of such administrative, legal, accounting, expert and clerical assistance, the purchase or lease of such real or personal property, materials, supplies and equipment, and the making of such contract or contracts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

B. To pay or provide for the payment of all premiums and charges on such policy or policies of insurance as may be issued to the Trustees for the benefit of such employees of contributing Employers as the Trustees shall determine to be eligible for coverage thereunder.

C. To accumulate contributions and other monies received by the Trust Fund in excess of the amounts necessary for the purposes of the Fund, and to establish a Reserve Fund in such amount as the Trustees, in their sole discretion, may deem necessary or desirable for the proper administration of the Fund. Such Reserve Fund may consist, in whole or in part, of amounts left with the insurance carrier and of such investments as may be permitted by the provisions of paragraph 4 hereof.

6. In purchasing policies of insurance to carry out the purposes of the Fund, the Trustees shall deal only with insurance companies (which term includes hospital service and medical expense indemnity corporations) authorized to transact business in the State of New York and subject to the regulation of the Superintendent of Insurance of New York. All such policies of insurance shall be of the type known as Group Insurance, the master policy to be issued in the name of The Trustees or of the Fund, as the case may be, and individual certificates under such policy to be issued to each eligible employee of a Contributing Employer. The master policy and individual certificates shall contain suitable provisions authorizing the employee to designate and to change the beneficiary or beneficiaries of any proceeds payable upon the death of such employee.

7. If at any time the contributions made or to be made to the Trustees by the Contributing Employers, after deduction of amounts necessary to pay estimated expenses pursuant to paragraph 5.A hereof, and estimated expenses pursuant to paragraph 11 hereof, shall be insufficient to meet the cost of the policy or policies of insurance issued to the Trustees or to the Fund, the Trustees may take such action as they may deem necessary or advisable in connection with the reduction of then existing insurance benefits or substitution of other benefits of lesser cost, in order that the cost of such insurance policy or policies shall not be greater than the income of the Fund, plus such amounts as the Trustees may have elected to transfer from the Reserve Fund to apply to the cost of such insurance.

8. Neither the Union nor the Association, nor any Contributing Employer, person insured or person claiming by or through an insured person by reason of having been named a beneficiary for insurance benefits or otherwise, shall have any claim or right of any kind in or to the Fund or any property of the Trust. The sole rights and interests of any per-

fairly arguable. In addition to the overall tenor of the agreement, we are particularly drawn to this conclusion by consideration of Paragraph 5, commencing, "The Trustees shall use and apply the Trust Fund for the following purposes, and none other," going on to list three specific purposes, of which the purchase of insurance policies is one. Since the trustees were plainly without power to approve the proposal that the fund become self-insuring, any deadlock on this subject was not upon a "question coming before the Trustees for decision," and appellants' promise to agree upon an umpire in such event did not become operative.

Judgment reversed with directions to dismiss the petition.[3]

sons insured and persons claiming by or through them shall be limited to the insurance benefits specified in the policies of group insurance issued to the Trustees or to the Fund, and shall be subject in all respects to the provisions of such policies. (Italics supplied.)

3. By Paragraph 20 of the trust agreement