**Harry BATH, Charles Schadler and Guy Downing, as union-selected trustees of that trust known as the "Colorado Teamster Health & Welfare Fund," and Locals 17, 146 and 961, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioners,**

**v.**

**N. C. PIXLER, Bennie Goldstein and T. M. Davis, as management-selected trustees of that trust known as the "Colorado Teamster Health & Welfare Fund," and Western Empire Operators Association, a Colorado corporation, Respondents.**

Civ. A. No. 67–C–482.

United States District Court
D. Colorado.

April 26, 1968.

Myrick, Criswell & Branney, John A. Criswell, Englewood, Colo., for petitioners.

Grant, Shafroth, Toll & McHendrie, Peter J. Crouse, Denver, Colo., for respondents.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This case presents the difficult question of whether this Court has jurisdiction over a controversy arising out of attempts to terminate a union welfare trust created pursuant to § 302(c) (5) of the Taft-Hartley Act, 29 U.S.C. § 186 (c) (5).

The trust in question, commonly known as the "Colorado Teamster Health and Welfare Fund," was created in 1953 pursuant to a collective bargaining agreement between Western Empire Operators Association, which is the bargaining agent for various freight transport companies, and several locals of the Teamsters Union, which represent employees of the freight companies. The trust agreement was carefully drawn to bring it within the exceptions provided by § 302(c) (5) of the Taft-Hartley Act, and the fund was intended to provide union employees and their families with hospitalization and medical benefits allowed by the Act. The trust fund is presently administered by six trustees, and in accordance with § 302(c) (5) (B), three of the trustees were chosen by the employers and three were chosen by the local unions.[1]

The welfare trust functioned actively until 1964, and during that period benefits were paid to union employees in accordance with the terms of the trust agreement. In 1964, pursuant to a new collective bargaining agreement, the em-

---

1. The trust was originally administered by ten trustees, five chosen by the employers and five chosen by the unions, but sometime prior to 1964 the number of trustees was reduced to six. There is a dispute as to whether this was accomplished by formal amendment, and the respondents argue that some former trustees are indispensable parties to this action. This question will be determined by the Court at a later date.

ployers ceased making contributions to the existing welfare trust and began contributing to a new welfare trust known as "Western Teamsters Welfare Trust." Since the new trust provided medical and hospitalization benefits in excess of those provided under the old trust, the trustees felt it would be a waste of trust funds to expend money for duplicate medical payments. Thus, no benefits have been paid under the old trust since 1964, and all trustees apparently agree that the trust should be terminated in some manner.[2]

The relevant termination provisions set forth in the trust agreement are as follows:

"No use [of trust funds] for the benefit of the employees, their families, beneficiaries, or dependents shall be made except by way of health and welfare benefits and excluding always any direct distribution of cash or property, any funds that amount to less than one complete monthly premium will be distributed at the direction of the trustees to some charitable organization."

In relevant part, the amendment provisions of the trust agreement read as follows:

"This Agreement and Declaration of Trust may be amended in any respect not specifically prohibited in this instrument, from time to time, by written instrument duly executed by all parties at the time and by all Trustees at the time.

\*    \*    \*    \*    \*    \*

No amendment may be adopted which will alter the basic principles of this Agreement and Declaration of Trust or be in conflict with the then existing bargaining agreements with the Unions to be contrary to any then applicable law or governmental rule or regulation."

The management-selected trustees have proposed that the trust be terminated by using its funds to provide college scholarships for employee dependents, but this plan is opposed by the union-selected trustees on the ground that it would violate the terms of the trust and the requirements of § 302(c) (5) (A). The union-selected trustees favor paying the existing trust funds over to the new welfare trust, but this is opposed by the management trustees also on the ground that it would be unlawful.

The present lawsuit, initiated by the union-selected trustees, seeks an order enjoining the disposition proposed by the management trustees and declaring the disposition proposed by the union trustees to be lawful. While this petition requests both declaratory and injunctive relief, we will treat it as a request for declaratory relief only, because the petitioners have not demonstrated that the respondents are in a position to make a unilateral disposition of the trust funds. As an alternative form of relief, the petitioners ask the Court to appoint an impartial umpire pursuant to § 302 (c) (5) (B) in order to break the deadlock in the board of trustees. The management trustees have filed a motion to dismiss on the grounds that § 302(a) does not grant this Court jurisdiction over the internal administration of union welfare trusts and the appointment of an impartial umpire is improper under the circumstances of this case. Briefs have been filed by the parties and the matter now stands submitted.

Subsections 302(a) and (b) of the Taft-Hartley Act make it a misdemeanor for any employer to pay, and for any employee or employee representative to receive, any money passing from the former to the latter. Subsection (c) provides five exceptions, the last of which allows payments to be made to a welfare trust fund for the exclusive

---

**2.** The corpus of the old trust now amounts to approximately $25,000.00, which is the amount which was in the trust at the

time employer contributions ceased, plus investment earnings since that date.

benefit of employees and their families, provided that

"such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance * * *."

Section 302 contains two jurisdictional provisions, both of which are relied upon by petitioners in this case. The first, subsection 302(c) (5) (B), provides that in the event of a deadlock between the employer and employee trustees on the administration of a welfare trust, "an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office * * *." The second, subsection 302(e), provides that the district courts "shall have jurisdiction * * * to restrain violations of this section, without regard to" the Clayton Act or the Norris-La-Guardia Anti-Injunction Act.

■ It is clear at the outset that this is not a proper case for the appointment of an umpire. The dispute among the trustees is a legal controversy, not a dispute over the practical administration of the trust. All trustees apparently agree that the trust should be terminated, but they disagree over which course of action would be lawful under the trust agreement and the provisions of § 302(c) (5). It would be improper to appoint an umpire in such circumstances, since the umpire would not be empowered to resolve any legal disputes or to take any action which would violate the terms of the trust or the applicable provisions of § 302. Barrett v. Miller, 276 F.2d 429 (2nd Cir. 1960). Thus, acceptance of jurisdiction based on such

a flimsy pretext could not be justified. Therefore, we rule this out as a jurisdictional basis and the request for such an appointment is denied.

A determination on the motion to dismiss must therefore depend upon the construction to be given to subsection 302(e). Petitioners argue that § 302(e) empowers the district courts to fashion a body of federal trust law and to exercise broad equity jurisdiction over all aspects of the welfare trusts whose life depends on the permissive exception of § 302(c) (5). This reasoning is similar to that adopted by the Supreme Court in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972, which involved section 301(a) of the Taft-Hartley Act. And the Lincoln Mills rationale has been applied to § 302 (e) by at least two courts. See, Copra v. Suro, 236 F.2d 107 (1st Cir. 1956), and Raymond v. Hoffmann, Civil No. 37356, E.D.Pa., March 25, 1966. However, the weight of authority is apparently to the contrary. See, e. g., Employing Plasterers' Association, etc. v. Journeymen Plasterers', etc., 279 F.2d 92 (7th Cir. 1960); O'Rourke v. Breakstone Bros. Inc. (Thacher), 218 F.Supp. 648, 651 (S.D.N. Y.1963); Holton v. McFarland, 215 F.Supp. 372, 376 (D. Alaska 1963); and Sanders v. Birthright, 172 F.Supp. 895 (D.Ind.1959).

■ Neither the spectre held out by respondents that acceptance of jurisdiction will open up a vast new trust field to federal administration, nor the argument of petitioners that the federal courts should accept such a broad equity commitment need be accepted. We are persuaded that the Lincoln Mills reasoning applied to section 301 justifies acceptance of jurisdiction for the limited purpose of this suit, namely disposition of locked up funds following completion of the trust purposes. This at most calls for the exercise of cy pres powers to solve a deadlock which exists only because a trust authorized by section 302 was created. Certainly a federal court is not powerless to entertain a suit which seeks to unlock these funds. We note in pass-

ing that one possible disposition would be a direction to use the funds for the purposes originally intended by augmenting payments in instances in which present trust is inadequate to meet major medical costs. This would not require any major judge fashioning of the law or extensive trust supervision.

We have also considered whether 28 U.S.C. § 1337 can serve as a jurisdictional basis, but in view of our holding that section 302 empowers the court to entertain a controversy such as the present one, we need not pass on whether section 1337 provides an independent jurisdictional basis.

Furthermore, we do not reach the question whether section 302 authorizes federal courts to fashion federal trust law to govern day to day administration of union welfare trusts. This question is not presently before us. We do hold that a federal court is not lacking in power to undertake solution of a dilemma such as the present one, which has come about under the authority of section 302 of the Act. Thus, our present commitment is limited.

The motion to dismiss is denied.