Jimmie H. McMAHAN, John A. Fishman, and Donald L. Ingram, Plaintiffs,

v.

George H. CORNELIUS, Jr., Nancy Hayworth, and Oliver R. Furnish, Defendants.

No. IP 89–994–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 26, 1991.

---

Frederick W. Dennerline, III, Fillenwarth Dennerline Groth & Baird, Indianapolis, Ind., for plaintiffs.

S. Gregory Zubeck, Kathryn M. Kunz, Kunz & Kunz, Indianapolis, Ind., for defendants.

## ENTRY

BARKER, Judge.

This matter is before the court on cross-motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). The defendants filed their motion on November 6, 1989, seeking judgment on the issues raised in the plaintiffs' complaint. The plaintiffs filed their cross-motion on December 22, 1989, also seeking judgment on the issues raised in the complaint. The court heard oral argument on both motions on February 11, 1991. For the reasons set forth below, the court GRANTS the defendants' motion and DENIES the plaintiffs' motion.[1]

## I. BACKGROUND

A motion for judgment on the pleadings may not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987). Moreover, the court may consider only the pleadings and must view as true the non-movant's allegations of fact, although it is not bound by the non-movant's legal conclusions. *Id.* In this case, the material facts underlying both motions are undisputed, and thus a single account of the facts will suffice as background for the court's rulings on both motions.

### A. Facts

The undisputed facts as stated in the pleadings, or as stipulated by the parties, are as follows. The plaintiffs are the three union trustees of a pension-plan trust fund

---

1. Because, however, the defendants have interposed a counterclaim that is not addressed in either motion, this entry does not make final disposition of the case.

established for the benefit of members of the Indianapolis Mailers Union No. 10 working at Cornelius Communications Company. The defendants are the three employer trustees of the same fund. The pension plan was a "defined benefits plan."

On November 7, 1988, all six trustees of the fund met and voted to terminate the pension plan as soon as possible, for reasons connected with the decertification of the Indianapolis Mailers Union No. 10, whose members now belong to a different union. On March 6, 1989, the trustees met again to discuss the mechanics of the termination. At the second meeting, the union trustees proposed that the assets remaining in the fund after the payment of expenses and accrued benefits be distributed to the participants of the plan, pursuant to a formula to be devised by an actuary.[2] These surplus assets amount to $95,691.00. The three union trustees voted in favor of the proposal and the three employer trustees voted against it. Later, the union trustees proposed that the trustees submit the deadlocked issue to arbitration, claiming as their authority 29 U.S.C. § 186(c)(5)(B) (1988).[3] The employer trustees refused to agree to arbitration.

On September 8, 1989, the union trustees filed this action against the employer trustees to ask the court to appoint an umpire to resolve the deadlocked proposal, also pursuant to 29 U.S.C. § 186(c)(5)(B). The plaintiffs further request that we assess attorney fees and costs against the defendant trustees, for their alleged breach of fiduciary duty in refusing arbitration.

The employer trustees filed their answer, together with their "additional responses," counterclaim and motion for judgment on the pleadings, on November 6, 1989. In their answer, the employer trustees deny that they breached their fiduciary duty in refusing arbitration and oppose the court's appointment of an umpire. In their "additional responses," the employer trustees assert that the plaintiffs' complaint fails to state a claim upon which relief can be granted, that the plaintiffs are guilty of unclean hands in insisting that the trust residue be distributed to participants without legal justification, and that the trust agreement protects the defendants from an assessment of attorney fees and costs. In their counterclaim, the employer trustees seek a declaratory judgment that the plan "sponsor" is entitled to reversion of the $95,691.00 surplus, an order directed at the plaintiffs to terminate the plan with due haste, and an assessment of attorney fees and costs against the union trustees.

### B. Trust Agreement and Plan Provisions

The parties rely on various provisions of the trust agreement and pension plan set out below. The trust agreement is attached to the plaintiffs' complaint. The pension plan, incorporated by reference into the trust agreement, at Section 1(d) of the latter, is attached to the defendants' answer.

Both the plaintiffs and the defendants have referred us to Section 3.02 of the pension plan, which provides:

---

2. The defendants agree that a meeting, at which the trustees agreed to terminate the trust, took place on November 7, 1988, and that thereafter other meetings were held to discuss the mechanics of termination. In their answer, however, the defendants profess no knowledge of whether one such later meeting was held on March 6, 1989, or of any proposals made on that date. Nonetheless, in their counterclaim, the defendants admit that the plaintiff trustees took the position that the surplus assets be distributed to the participants. To the extent that there is a dispute about this matter, the court does not deem it material for the purpose of ruling on the pending motions.

3. This statute permits certain trust funds to be established for the benefit of employees,

> *Provided*, That ... (B) ... in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, [the written] agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States....

29 U.S.C. § 186(c)(5)(B) (1988).

*Employer Contributions.* The Employer shall make such contributions to the Trust Fund as shall be agreed upon in the collective bargaining agreement in effect between the Employer and the Union.... In no event shall the amount of the Employer's contributions be increased or decreased except as shall be agreed upon by written agreement between the Employer and the Union. On the basis of actuarial study and estimates, it is contemplated that the amount of contributions required from the Employer will provide the benefits under the Plan and pay the expenses incident to its operation on a sound actuarial basis. It is recognized, however, that actual experience under the Plan may differ from such actuarial estimates and that an actuarial evaluation made by the actuary may establish to the satisfaction of the Trustees that the Trust Fund is capable of providing benefits upon an actuarially sound basis greater than those provided in the Plan, or, that the Trust Fund is incapable of sustaining the benefits provided in the Plan upon an actuarially sound basis. On the basis of any actuarial evaluation of the Trust Fund at any time and from time to time, the Trustees shall have the right, in their sole discretion, to amend the Plan by changing or adjusting the types and amounts of benefits provided by the Plan and/or the eligibility requirements therefor and/or the methods of payment thereof.

One provision relied on by the defendants alone is Section 8(f) of the trust agreement, which provides:

In the event of a deadlock or other situation which prevents agreement of a majority of the Trustees, the matter shall be decided by the Directors and the Union.

Another provision cited by the defendants is Section 10(b) of the trust agreement:

The Trustees may terminate this Trust Agreement and Trust at any time. Upon such termination, the assets of the Trust Fund shall be applied or distributed in accordance with the provisions of the Plan which are applicable upon termination of the Plan.

Finally, the defendants cite Section 8.02(d) of the pension plan, which provides:

After the satisfaction of all fixed and contingent liabilities under the Plan, any overpayments made by the Employer into the Trust Fund as a result of erroneous actuarial computations shall be repaid to the Employer.

## II. DISCUSSION

■ A motion for judgment on the pleadings is not to be filed until "[a]fter the pleadings are closed." Fed.R.Civ.P. 12(c); *Flora v. Home Federal Sav. and Loan Assoc.,* 685 F.2d 209, 211 n. 4 (7th Cir.1982). Because the defendants filed a counterclaim denominated as such, the plaintiffs were required by Federal Rule of Civil Procedure 7(a) to file a reply. By filing their motion together with their answer and counterclaim, the defendants were filing prematurely. The plaintiffs, however, have not objected to the defendants' motion on this ground and the plaintiffs' reply was filed together with the plaintiffs' response brief and cross-motion, before either party had completed its briefing and well before oral argument and this ruling. Finding that no prejudice will result from the court's consideration of the defendants' motion at this time, the court will rule on the defendants' motion as if it had been renewed after the pleadings were closed, that is, after the filing of the plaintiffs' reply. *Cf. Time, Inc. v. Viobin Corp.,* 128 F.2d 860, 863 (7th Cir.) (district court's grant of 12(c) motion before filing of answer upheld, where no prejudice to nonmovant), *cert. denied,* 317 U.S. 673, 63 S.Ct. 78, 87 L.Ed. 540 (1942).

■ The defendants make two arguments. First, they argue that 29 U.S.C. § 186(c)(5)(B), which the plaintiffs rely on for the proposition that an umpire must be appointed when the trustees deadlock on the administration of the trust, is inapplicable to this case. By its terms, Section 186(c)(5)(B) applies only when the written agreement between the employer and the employees provides for umpires, whereas

the trust agreement in this case provides (at Section 8(f)) that in the event of deadlock matters are to be referred not to an umpire but to the Directors and the Union.

The plaintiffs respond to this argument by contending that the inclusion of an umpire provision is not optional but is a prerequisite for valid Section 186(c)(5) trusts and that therefore the contrary provision in section 8(d) of this trust is illegal. Since none of the parties desires that the trust be declared invalid, the plaintiffs urge the court to reform the trust so that Section 8(d), which they claim was "negligently drafted," is eliminated, and so that the trust agreement provides for the appointment of an umpire whenever Section 186(c)(5)(B) requires it. In support of their position, the plaintiffs cite *Ader v. Hughes*, 570 F.2d 303 (10th Cir.1978), which implied an umpire provision when the intent of the parties to create a Section 186(c)(5) trust was otherwise "patent."[4] They also cite *Local 50, Bakery and Confectionery Workers Union v. Local 3, Bakery and Confectionery Workers Union*, 733 F.2d 229 (2d Cir.1984), which says more generally that federal courts have jurisdiction to remedy "structural defects" in employee trust funds.

The defendants' second argument is stated as an alternative to their first argument. The defendants argue that even if, under Section 186(c)(5)(B) and the trust agreement, certain deadlocks must be referred to an umpire, this deadlock is not one of them. Section 186(c)(5)(B) says only that deadlocks concerning matters of "administration" must be referred to an umpire. The defendants maintain that the question of the distribution of trust funds after termination is purely "legal," and depends on the construction of Section 8.02(d) of the plan.

This argument raises the issue of the meaning of the term "administration" as it appears in 29 U.S.C. § 186(c)(5)(B). Some courts have distinguished between the day-to-day management of the trust and ex-

traordinary matters. *See, e.g., Ader*, 570 F.2d 303; *cf. Hawkins v. Bennett*, 704 F.2d 1157, 1161 (9th Cir.1983) (contrasting "day to day fiduciary administration" and "structural deficiencies"). Others have distinguished between "practical administration" and "legal" disputes, *Bath v. Pixler*, 283 F.Supp. 632 (D.Colo.1968), or between disputes whose resolution is within the trustees' power and those that are not. *E.g. Barrett v. Miller*, 276 F.2d 429 (2d Cir.1960). For their interpretation, the defendants rely principally on *Bath* and *Barrett.*

The *Bath* case presents facts very similar to those in the case at hand. In *Bath*, after the trustees agreed unanimously to terminate a welfare trust, the union-selected trustees sued the employer-selected trustees over the distribution of the assets of the trust. The court said:

It is clear at the outset that this is not a proper case for the appointment of an umpire. The dispute among the trustees is a legal controversy, not a dispute over the practical administration of the trust. All trustees apparently agree that the trust should be terminated, but they disagree over which course of action would be lawful under the trust agreement and the provisions of § [186](c)(5). It would be improper to appoint an umpire in such circumstances, since the umpire would not be empowered to resolve any legal disputes or to take any action which would violate the terms of the trust or the applicable provisions of § [186].

283 F.Supp. at 635.

The *Bath* court cited *Barrett*, which the defendants also cite. In *Barrett*, the Second Circuit refused to refer a deadlocked proposal to arbitration, when the trust agreement could not fairly be interpreted to give the trustees the power to apply trust funds to the purpose proposed by one group of trustees and resisted by the other group. Under this broad interpretation, the only disputes not properly referred to

---

**4.** *Ader* is of course distinguishable, since in that case the agreement was silent on what to do in the case of deadlock. Here, by contrast, the parties considered the problem and agreed to

include a provision, Section 8(f), that seems to violate Section 186(c). The parties' intent to create a valid 186(c) trust is, therefore, less than "patent."

an umpire are those in which the trustees attempt to exceed their powers. The *Barrett* court, strictly speaking, was interpreting the trust language whereby the parties agreed to refer to an umpire "a deadlock upon any question coming before the Trustees for decision," but later courts have read the decision to advance an interpretation of "administration," as used in Section 186(c)(5)(B), and we do the same. *See, e.g., Hawkins,* 704 F.2d at 1160.

In response to the defendants' second argument, that in any case the deadlock at issue does not involve trust "administration" and thus need not be referred to an umpire under the statute, the plaintiffs insist that the dispute is suitable for resolution by an umpire, because the issue whether the $95,691.00 consists of "overpayments ... as a result of erroneous actuarial computations" is factual, rather than legal. The resolution of that issue is the heart of this dispute, because it will determine whether the employer is entitled to a reversion of the sum under Section 8.02(d) of the plan. The plaintiffs argue that the source of the disputed money is a factual question, whose resolution will depend on evidence from "all those who have been involved in the administration of the Fund, including trustees, actuaries and accountants." Plaintiffs' Response Brief at 5 (filed December 22, 1989). The plaintiffs dismiss *Bath* by arguing that the court in that case mistakenly framed the issue as legal rather than factual and that the court mistakenly viewed the deadlocked proposal as requiring the trustees to exceed their powers.

As further support for their argument that the dispute underlying this lawsuit concerns a matter of "administration" that must, once the trust agreement has been modified, be referred to an umpire, the plaintiffs cite Section 3.02 of the plan. That section gives the trustees the discretion to increase benefits whenever the trust fund has a surplus. The plaintiffs argue that the deadlocked proposal calls, in effect, for using a surplus to increase benefits, which the trustees could, and indeed should, according to the plaintiffs, have authorized before termination. In other words, the proposal the plaintiffs want referred to an umpire would not require the trustees to act *ultra vires* and hence is a matter of administration under the *Barrett* approach.

Finally, the defendants have argued that they will ultimately prevail on their counterclaim for reversion of the fund surplus. They urge us to adopt the Internal Revenue Service's definition of "actuarial error," as at least one other court has done, and which they argue entitles them to a reversion. *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Dyneer Corp.,* 747 F.2d 335, 337 (6th Cir.1984) (adopting interpretation of 26 C.F.R. § 1.401–2(b) (1990) given in Rev.Rul. 83–52, 1983–13 C.B. 87, *modified and superseded,* Rev.Rul. 85–6, 1985–1 C.B. 133). They also contend that the distribution of the trust surplus to the plan participants would provide the participants with a windfall. For this proposition, they cite *Washington–Baltimore Newspaper Guild Local 35 v. Washington Star Co.,* 555 F.Supp. 257 (D.D.C.1983), *aff'd without opinion,* 729 F.2d 863 (D.C.Cir.1984), which upheld a trust amendment requiring reversion of fund surplus to the employer. The court in that case said: "As a defined benefit plan, the participants, in the absence of an agreement to the contrary, have no right to a windfall resulting from an employer's overly generous contributions to the plan." *Id.* at 261.

The court concludes that the present dispute does not involve a "deadlock on the administration" of the trust fund, no matter which interpretation of that phrase one applies. The question of what to do with surplus funds after the trustees have agreed on termination is clearly not one of day-to-day administration, but rather an *extraordinary* matter. The plaintiffs have cited no cases in which post-termination deadlocks were deemed deadlocks on administration. On the other hand, the defendants have cited the *Bath* case, which found the very deadlock that is the subject of the present dispute to be non-arbitrable.

1162

Moreover, the resolution of the problem of which group is entitled to the surplus will require a *legal* determination of such questions as the meaning of the phrase "erroneous actuarial computations;" whether the trust is invalid because it contains no umpire provision; and whether the participants would indeed receive a windfall if the funds were distributed to them. These questions will no doubt involve underlying factual issues, but the legal issues are so intertwined with the factual ones an umpire could resolve that it would make more sense for a single body with expertise at resolving both kinds of issues, that is a court, to resolve both. The appointment of an umpire is particularly inappropriate in a case such as this one, in which the normal forces are not operating to ensure a fair decision: after all, the union that negotiated the employer's contributions and selected half of the trustees and which must under the plan agree to any modification of those contributions, no longer exists.

Finally, although the plaintiffs have invoked Section 3.02 of the plan to show that the trustees had the power to raise benefit levels and therefore that the court would not be referring to an umpire a matter beyond the trustees' powers to decide, it is clear to the court that Section 3.02 does not apply after the trustees have agreed to terminate the trust. For if the union trustees were free to exercise their Section 3.02 powers to increase the participants' interest in the fund after the termination decision, no surplus subject to reversion under Section 8.02(d) of the plan would ever arise. If Section 8.02(d) is to have any meaning, then the trustees' Section 3.02 discretion must end when the trustees decide to terminate the trust.

Thus, because the parties are not deadlocked "on the administration" of their trust fund, there is no authority for the appointment of an umpire to resolve the dispute between them.

## CONCLUSION

For the foregoing reasons, the court finds that no material fact remains to be resolved with respect to the plaintiffs'

claim for the appointment of an umpire, and that the defendants are entitled to judgment as a matter of law on that issue. Accordingly, the defendants' motion for judgment on the pleadings is GRANTED and the plaintiffs' cross-motion for judgment on the pleadings is DENIED.

It is so ORDERED.