**Application of Penny SINGLETON et al.,**
**Petitioners,**

v.

**Ephraim M. ABRAMSON et al.,**
**Respondents,**

**For the appointment of an impartial**
**umpire, etc.**

**No. 70 Civ. 2995.**

United States District Court,
S. D. New York.

Oct. 21, 1971.

Supplemental Opinion and Order
Nov. 11, 1971.

Schulman, Abarbanel, Perkel & Mc-Evoy, New York City, for petitioners; Benjamin Schlesinger, New York City, of counsel.

Silverstone & Rosenthal, New York City, for respondents; Michael Rechler, New York City, Michael A. Meyers, Woodside, N. Y., of counsel.

LASKER, District Judge.

Deadlocked decisions about the administration of a labor union welfare trust fund prompt these cross-petitions seeking the appointment of an impartial umpire by this court. Authority for such action is found in § 302(c) (5) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c) (5) (B), and Article III, paragraph 10(a), of the Agreement and Declaration of Trust of the American Guild of Variety Artists for its Welfare Trust Fund ("Trust Agreement").[1]

---

1. 29 U.S.C. § 186(c) (5) (B) reads in relevant part as follows:

"(B) the detailed basis on which such payments are to be made is specified in a written agreement with the employ-er, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the repre-

Petitioners are Trustees of the Welfare Trust Fund ("Fund"), created in 1953 for the benefit of employees in the variety entertainment field and their families. Three of the Trustees represent the American Guild of Variety Artists ("AGVA") and three represent the "Operators" (i. e., employers) who have collective bargaining agreements with AGVA and who make contributions to the Fund.[2]

By the spring of 1970, several issues had become bones of contention between the AGVA Trustees and the Operator Trustees. The AGVA Trustees, determining that the Board was hopelessly deadlocked as to some of the issues, petitioned this court to appoint an umpire to break the even division of trustee votes. Respondents, the Operator Trustees, contest the propriety of submitting any of these issues to an umpire, and in turn file a cross-petition seeking appointment of an umpire to resolve a separate impasse.

Five deadlocked issues are posed for resolution by a court-appointed umpire.

sentatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, . . ."

Article III, paragraph 10(a) of the Trust Agreement implements these provisions by stating:

"(a) The power or right reserved to the Trustees or conferred upon them hereunder shall be exercised only by a majority of the Trustees at a meeting of the Trustees duly called, or by a signed concurrence of all Trustees thereto in the event there is no such meeting. In the event of the absence of any Trustee appointed by AGVA, the remaining Trustees appointed by AGVA may vote in behalf of such absent Trustee. In the event of the absence of any Trustee appointed by the Operator, the remaining Trustees appointed by the Operator may vote in behalf of such absent Trustee. In the event of a deadlock among the Trustees, the question shall be decided by a neutral person agreed upon by both groups of Trustees, and in the event such neutral person cannot be agreed upon within a reasonable length of time, an impartial umpire to decide such dispute shall be appointed by a Judge of the United States District Court for the Southern District of New York upon petition brought by either group of Trustees. Neither the neutral person nor the impartial umpire shall have any power to alter, amend, add to or take away from any of the terms of this Trust Agreement or any Collective Bargaining Agreement. Any costs, fees and expenses in connection with the foregoing shall be paid by the Fund. The Trustees may delegate any of their ministerial powers or duties to any one or more of the remaining Trustees or to any agent or employee engaged by the Trustees to administer the Program."

2. The AGVA Trustees are the petitioners in this action; respondents are the Operator Trustees. Respondent Hamid has died since the commencement of this action. There are also three Alternate AGVA Trustees, Russell Swann, who also serves as Secretary-Treasurer of AGVA, Sally Rowe and Paul Benson, both of whom serve as AGVA Vice-Presidents. There is one Operator Alternate at present, Robert Lipman. Norman J. Steinberg, who was an Operator Alternate at the commencement of the action, has since resigned.

The Trust Agreement provides that vacancies among the AGVA Trustees or Alternates shall be filled by appointment of the AGVA National Board or Executive Committee; Operator Trustee vacancies are to be filled by the remaining Operator Trustees. All Trustees serve for the duration of the Trust Fund. The Trust Agreement provides that "[n]o Trustee may serve in an administrative capacity in connection with the Fund for compensation. No paid or salaried employee of AGVA or of the Operator shall be eligible to be or shall become either a paid employee or Trustee of the Fund." AGVA Board members may serve as Trustees. See Trust Agreement, Article III, paragraphs 10(a), 11, attached as Exhibit A to the Order to Show Cause filed July 24, 1970.

The first four are the ones brought here by the AGVA Trustees:

(1) Whether or not to amend the Trust Fund Agreement pursuant to Article III, paragraph 10(s), to provide that Operator Trustee vacancies shall be filled in some method other than by selection by the remaining Operator Trustees in order to assure that actual Operators, or persons closely linked to them, serve as Operator Trustees and not persons with no ties to the Operators, as is allegedly now the case.

(2) Whether or not under Article III, paragraph 10(d), of the Trust Agreement, which requires that the Fund provide fidelity bonds for all persons who collect contributions for the Fund, the Fund is obliged to provide a bond for AGVA employees who collect such contributions.

(3) Whether or not the present manager of the office of the Fund should be replaced pursuant to Article II, paragraph 3, and Article III, paragraph 11.

(4) Whether or not the present Operator Trustees and Alternate should be removed since none are actually Operators or related to Operators, as the petitioners contend is mandated by paragraphs 6 and 16 of Article III.

The final issue is raised by the respondents as cross-petitioners: (5) Whether or not Penny Singleton as Trustee and Sally Rowe and Paul Benson as Alternate Trustees should be permitted to participate on the Board of Trustees since their status as paid employees of AGVA violates Article III, paragraph 11, and Article VII, paragraph 4, of the Trust Agreement.

## DISCUSSION

The relevant portions of 29 U.S.C. § 186(c) (5) (B) require as to a statutory trust fund such as this that "in the event the employer and employee groups *deadlock* on the *administration* of such fund and there are *no neutral* *persons* empowered to break such deadlock, such agreement [must provide] that the *two groups shall agree on an impartial umpire* to decide such dispute, or in event of their *failure to agree* within a reasonable length of time, an *impartial umpire to* decide such dispute *shall . . . be appointed* by the district court . . ." (emphasis added).

█ Under this statutory mandate, petitioners must satisfy the court that (a) a genuine deadlock exists on an issue of administration, (b) no agreed neutral person is available to break the impasse, (c) the parties fail to agree on an impartial umpire.[3] The issue must be one which the trustees have the authority under the trust agreement to decide. Mahoney v. Fisher, 277 F.2d 5, 6 (2d Cir. 1960). As was stated in Barrett v. Miller, 276 F.2d 429, 431 (2d Cir. 1960), "while a trustee petitioning for the appointment of an umpire need not demonstrate that his interpretation that the issue was one the trustees could decide is the correct one [citing cases], he must at least establish that it is a possible one."

Examining each of the five issues in light of the statutory requirements, it appears that the first three are ripe for determination by a court-appointed umpire.

(1) Amendment

Respondents assert that the Trust Agreement implementing the provisions of 29 U.S.C. § 186(c) (5) (B) is limited by the provision in the Trust Agreement that "Neither the neutral person nor the impartial umpire shall have any power to alter, amend, add to or take away from the terms of this Trust Agreement or any Collective Bargaining Agreement." Respondents concede a deadlock over whether or not to amend, but urge that (a) an umpire cannot alter the Trust Agreement and thus cannot amend, and (b) the issue of amend-

---

3. Petitioners have submitted to the Operator Trustees suggested names for an independent and impartial umpire. No agreement has been reached, and the parties appear unable to settle on a mutually agreeable umpire.

ment is not within the "administration" of the Trust.

Petitioners argue that Article III, paragraph 10(s), of the Trust Agreement provides for amendment of the Agreement on the vote of a majority of the Trustees *plus* written approval of AGVA. They urge that, since it is within the power of the Trustees to amend, it is a proper function of "administration" and that a decision by an umpire would not constitute an act by the umpire to alter the Agreement.

Article III, paragraph 10(s), of the Trust Agreement specifies that a majority of the Trustees shall exercise the power to amend, and Article III, paragraph 10(a) of the Agreement provides that "[i]n the event of a deadlock . . an impartial umpire to decide such dispute shall be appointed." Thus the Agreement itself omits the word "administration" and deals only with deadlocks among the Trustees in the exercise of their express powers, such as the power to amend.

In any event, this Circuit has broadly construed the term "administration" as consonant with the policy of the Labor Management Relations Act provisions to resolve disputes. In Barrett v. Miller, supra, at 430, note 1, the Court stated:

"The trust agreement employs the language: 'deadlock upon any question coming before the Trustees for decision.' The statutory language is: 'deadlock on the administration of such fund.' Appellees argue that by this difference of expression the parties intended an area of arbitrability greater than that required by Section 302 (c) (5) (B). We, however, believe that the phrases have identical import."

■ Construing the Trust Agreement in the light of the *Barrett* rationale,[4] we hold that the issue of amendment is within the powers of the Trustees and is a deadlock as to Fund administration. A contrary determination would hamstring the continued operation of the Fund and defeat the intention of Congress in providing for court-appointed umpires. Accordingly, the issue should go to an umpire.

(2) Fidelity Bonds

Respondents contend that this issue is really a legal one not resolvable by arbitration. We disagree.

Article III, paragraph 10(d), of the Trust Agreement requires the Trustees to provide fidelity bonds for *all persons* authorized to deal with Fund monies. The Fund's Rules and Regulations, promulgated by the Trustees pursuant to Article III, paragraph 10(s) of the Trust Agreement, provide in Article VI that the Trustees "shall likewise secure bonds for all administrative personnel of the Fund . . . authorized to handle . . . monies relating to the Fund."

The Trustees have secured a bond for the Fund's own employees. AGVA employees who collect contributions to the Fund on its behalf are not covered by the Fund's bond but appear to be covered by an independent bond held by AGVA for its own staff. The Operator Trustees assert that AGVA's bond is sufficient for insurance purposes under state and federal law; the AGVA Trustees argue that the Trust Agreement states bonds "shall" be obtained for all persons authorized to handle Fund mon-

4. Both parties argue this application on the basis of federal law. Although Article III, paragraph 14, of the Trust Agreement provides that the Agreement "shall be interpreted and governed in accordance with the laws of the State of New York," the Court of Appeals of New York has determined that where controversies are "within the purview of our national labor legislation" then "such cases are not dealt with as a matter of State contract law and . . . the Federal law must be followed, and 'incompatible doctrines of local law must give way to principles of federal labor law.' [citing cases]." In Matter of Arbitration between Long Island Lumber Co. v. Martin, 15 N.Y.2d 380, 382–383, 259 N.Y.S. 2d 142, 144, 207 N.E.2d 190, 191 (1965).

ies and that AGVA employees qualify as such persons and that the Trust Agreement and certain federal laws [5] are violated unless the Fund obtains such bonding.

■ There is no need here to explore the merits of these contentions or the applicability of state or federal laws relating to insurance bonds for welfare funds. The present issue is narrow: must the Trustees under Article III, paragraph 10(d), provide bonds for AGVA employees authorized to collect Fund contributions? There is deadlock on this issue within the powers of the Trustees, and therefore it is ready for submission to an umpire.

### (3) Replacement of Fund Manager

Article II, paragraph 3(a), of the Trust Agreement states that the Fund shall be used "by the Trustees" to provide administrative staff (among other things) for the Fund. The Rules and Regulations of the Fund state in Article V, section 3, that the Chairman of the Fund shall "with the approval of a majority of the Board of Trustees, appoint and remove, employ and discharge, and fix compensation of all servants, agents, employees, etc." Article VII of the Rules states in paragraph 3 that "[t]he Trustees may, by a majority vote, appoint such administrative, functionaries and establish their tenure, if any, their salaries and their duties."

■ The AGVA Trustees seek to replace the Manager of the Fund. Without exploring the merits of the deadlocked Board motion to discharge the present Manager, it is clear that it is a question. of Fund administration. The respondents urge that the Board delegated the duty of initiating hiring and firing to the Board Chairman, and that the Trustees cannot raise the issue independently of the Chairman. However, the Trustees' fiduciary duties under Article II of the Trust Agreement to supervise management of the Fund must take precedence over the designation of responsibility in the Chairman. The same Rules and Regulations that delegate to the Chairman also re-assert the authority for the Trustees as a whole to appoint and establish tenure for staff. The competing constructions of the Rules and the decision whether or not to replace the Manager are within the powers of the Board and suitable, in the case of a deadlock, for determination by an umpire.

### (4) and (5) Removal of Trustees

Removal of Trustees is governed by Article III, paragraph 6, of the Trust Agreement, which provides for removal "at will as provided herein or in the Rules and Regulations." Article III, paragraph 16, states that "[a]n Operator shall cease to be an Operator within the meaning of this Agreement and Declaration of Trust when he no longer engages

---

5. At the April 3, 1969 meeting of the Trustees, the uncontested minutes reflect the position of AGVA counsel that "AGVA's employees who collect welfare contributions must be covered under the Fund's bond. He expressed the opinion that failure to do so is violative of a National Labor Relations Act." Counsel for the Trust, reflecting the view of the Operator Trustees, was that, since "AGVA had obligated itself to collect welfare contributions, AGVA's bond covering its employees was sufficient for insurance purposes." The latter counsel observed that the New York State Insurance Department had inquired into the situation and taken no action. (Minutes, pp. 6–7, Exhibit B to Affidavit of Benjamin Schlesinger sworn to July 9, 1970).

Respondents' answer ·to the petition asserts that § 464.5 of Regulations pursuant to Section 13 of the Welfare and Pension Plans Disclosure Act of 1959, 29 U.S.C. § 308d, requires bonding for persons handling funds and property of such plans, and that, since the Trust Fund's bond complies with this regulation, nothing more is required of the Trust. (Answer to Petition, filed August 28, 1970, pp. 4–5).

Petitioners in their Memorandum of Law filed July 24, 1970 found their assertion on Article III, paragraph 10(d) of the Trust Agreement. There is no further illumination of the alleged National Labor Relations Act violation mentioned at the April 3d meeting of the Trustees.

members of AGVA . . . ." Article VII of the Fund's Rules and Regulations provides that Operator Trustees may be removed, "either with or without cause, at any time, by a majority of the Trustees appointed by the Operator(s)."

At the June 2, 1970 meeting of the Trustees, the AGVA Trustees declared that they would not recognize the Operator Trustees as properly appointed, since none had any ties to actual Operators as that status is defined in the Trust Agreement. AGVA Trustee Singleton moved that the existing Operator Trustees "remove themselves as Trustees and any one else not in a contractual arrangement." This motion was countered by Operator Trustee Hamid's motion that "Miss Singleton not be permitted to act on behalf of the AGVA Trustees since she is a paid employee. Also that only the legally appointed AGVA trustees speak for themselves." Votes on both motions were deadlocked.

■ As to issue 4, the Operator Trustees decline to exercise their authority to replace themselves, and the wish of the AGVA Trustees that they do so does not create a deadlock in the exercise of powers held by the whole Board of Trustees under the Trust Agreement. While a deadlock might exist, given the posture of both groups of Trustees, if the AGVA Trustees sought to amend the Rules to change the system of replacement of Operator Trustees, no such motion has been made. There is,

therefore, no issue which an umpire would be empowered to decide.

■ On issue 5, the AGVA Trustees assert that the statutory requirements of 29 U.S.C. § 186(c) (5) (B) have not been met, since the Operator Trustees have not submitted a list of neutral persons to serve as an umpire on that issue.[6] This deficiency is, under the statute, fatal to a petition for an appointed umpire. Accordingly, the court is without power to act on the merits at the present time.[7]

## CONCLUSION

An umpire will be appointed pursuant to 29 U.S.C. § 186 to decide the issues determined above to be arbitrable. Each of the parties shall separately within 20 days of the filing of this memorandum submit to the court in writing the names of five persons proposed as umpire, indicating by number respective priorities of choice. Unless none of the names so suggested appears on both lists, the court will appoint an umpire from such lists. In the event that no name appears on both lists, the court will make an independent appointment.

In accordance with Article III, paragraph 10(a), of the Trust Agreement, the Fund shall bear the costs of the umpire.

The petition for the appointment of an umpire as to issues 4 and 5 is denied, without prejudice to renewal upon com-

6. The AGVA National Board or Executive Committee does not appear disposed to replace Miss Singleton or the Alternate Trustees under attack here. Since two of the AGVA Trustees are not challenged, the difficulties of Miss Singleton's status do not impair the functioning of the Board as a quorum, and full complement of Trustees exists. The motion is not to replace Miss Singleton, which is not within the full powers of the Board to do, but rather to refuse her participation in Trustee meetings.

7. As an alternate to appointing an umpire as to issue 5, the respondents propose that the court exercise jurisdiction

under 29 U.S.C. § 186(e) for the purposes of (a) declaring that the challenged AGVA Trustees were improperly appointed and are serving in violation of the Trust Agreement and (2) ordering their removal. Without determining the merits of such a proposal, it appears that the court's jurisdiction under 29 U.S.C. § 186(e) (as distinct from the provisions of 29 U.S.C. § 186(c) (5) (B)) is not properly invoked by petition, but rather in accordance with the Federal Rules of Civil Procedure, and particularly, for example, Rules 3 and 8(a). Since these procedures have not been followed, the court cannot take action on the proposal.

pletion of the proper procedural requirements.

It is so ordered.

## ON MOTION FOR REARGUMENT

Petitioners move, pursuant to General Rule 9(m) of this Court, for reargument as to issue (4) of the Opinion and Order of October 21, 1971, in this case. That issue dealt with a proposal to have the Operator Trustees of a Union Trust Fund remove themselves as Trustees, and the opinion held that as framed the issue did not present a "deadlock in the exercise of powers held by the whole Board of Trustees under the Trust Agreement." The motion to refer issue (4), as thus framed, to an umpire pursuant to 29 U.S.C. § 186(c) (5) (B) was accordingly denied.

Petitioners now contend that issue (4) also involved the further question of a motion to amend the Trust Agreement "with reference to the election and removal of Operator Trustees and the filling of vacancies of Operator Trustees." (Motion of plaintiff Singleton at April 2, 1970 Trustees' meeting, Exhibit B to motion papers filed July 24, 1970). This motion dealt with amendments proposed in a document entitled "Proposals for Trustees' Meeting AGVA Welfare Trust Fund, October 18, 1968" (Exhibit C, *supra*).

An independent review of the record in this case reveals that a motion to amend was made and that the uncontested minutes of the April 2, 1970 meeting show a deadlock.

█ Accordingly, the motion to reargue is granted, to the extent that the issue of whether to amend the Trust Agreement as to the election, replacement and filling of vacancies of Operator Trustees is held to be an issue ripe for submission to the umpire. The motion to have the present Operator Trustees replaced is not appropriate for an umpire, since the power of replacement is not one shared by the entire Board under the Trust Agreement presently in effect.

So much of page 760 of the October 21st Opinion as stated that no motion to amend the Agreement has been made is hereby amended to reflect the above discussion. The proposal to amend the Trust Agreement as to election, replacement and filling of vacancies of Operator Trustees shall be submitted to the umpire.

It is so ordered.