570 F.2d 303
 97 L.R.R.M. (BNA) 2550, 83 Lab.Cas. P 10,314
 Larry A. ADER, Bernard T. Robinson, Roy Spellman, Edward
Rylands, Theodore C. Sanford, Jr., Matthew Weaver, Wilbur
Scheller and Floyd Hitchcock, in their capacity as Union
Trustees of Carpenters' and Millwrights' Health Benefit
Trust Fund, Plaintiffs-Appellees,
v.
Bruce HUGHES, H. E. Anderson, Robert Dougan, Carl Smith,
Haskell Sloan, James S. Brown and Chris H. Seegmiller, in
their capacity as Employer Trustees of Carpenters' and
Millwrights' Health Benefit Trust Fund, Defendants-Appellants.
 No. 76-1680.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Nov. 16, 1977.
Decided Jan. 18, 1978.
Rehearing Denied Feb. 15, 1978.
 
 Clay R. Smith, Denver, Colo. (John W. McKendree, Denver, Colo., on brief), for plaintiffs-appellees.
 Robert R. Miller, Denver, Colo. (Robert G. Good, Denver, Colo., on brief), for defendants-appellants.
 Before SETH, BARRETT, Circuit Judges, and ROGERS, District Judge.*
 BARRETT, Circuit Judge.
 
 
 1
 The terms of Section 302(c)(5)(B) of the Labor-Management Relations Act of 1947 (LMRA) create the sharpest dispute presented on this appeal. The question is whether the amending of a trust established under the LMRA is a matter of trust "administration" that must be allowed to go to an impartial umpire under circumstances whereby the governing trustees are evenly divided for and against the proposed amendments. The parties urge that we also interpret certain language of a particular trust agreement.
 
 
 2
 The appellants and appellees are, respectively, the employer-appointed and the union-appointed trustees of the Carpenters' and Millwrights' Health Benefit Trust Fund, who serve by equal numerical representation. The union trustees petitioned the district court to appoint an umpire who would decide whether two amendments to the trust agreement should be adopted. The trial court granted the union trustees' motion for summary judgment and ruled that it would appoint an umpire. The employer trustees appeal therefrom.
 
 
 3
 The Carpenters' and Millwrights' Health Benefit Trust Fund was established in 1965 under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c). From time to time, the trustees have amended the original Trust Fund Agreement and Declaration of Trust. Two proposed amendments to the trust agreement are supported by all union trustees, and opposed by all employer trustees. One amendment would require that one employer trustee be appointed by the Rocky Mountain Association of Gypsum Drywall Contractors. Presently that appointment is made by another employer association. The other amendment would require an employer to continue making contributions to the fund after a labor contract expires. The employer trustees resist this amendment on the basis that it would provide the unions sole control over the timing of a strike.
 
 
 4
 Inasmuch as the two groups of trustees command equal voting power in governing the trust, and because the proposed amendments have failed to pass for want of a majority vote, the district court found that the parties had come to a deadlock on the amendments, requiring an order by the court to provide a fair, impartial means of resolving the impasse.
 
 
 5
 The district court found that appointment of an umpire was justified on two grounds. First, a 302(c)(5) trust agreement must provide for a court-appointed umpire "in the event the employer and employee groups deadlock on the administration of such (trust) fund." 29 U.S.C. § 186(c)(5)(B). Whether a deadlock is such as to require appointment of an umpire under the LMRA presents a federal question. Bath v. Pixler, 283 F.Supp. 632 (D.Colo.1968); Singleton v. Abramson, 336 F.Supp. 754 (S.D.N.Y.1971); Petition of Feldman, 165 F.Supp. 190 (S.D.N.Y.1958). Moreover, that question is one arising under an "Act of Congress regulating commerce." 28 U.S.C. § 1337; Francis H. Leggett & Co. v. O'Rourke, 237 F.Supp. 561 (S.D.N.Y.1964); Table Talk Pies of Westchester v. Strauss, 237 F.Supp. 514 (S.D.N.Y.1964). The district court ruled that decisions to amend or not to amend the trust agreement were administrative decisions within the meaning of the LMRA.
 
 
 6
 We note, parenthetically, that although the trust agreement in this case purports to be a 302(c)(5) trust agreement, and the district court found it to be such an agreement, it does not provide, as the LMRA requires, that "an impartial umpire to decide such dispute, shall on petition of either group (of trustees), be appointed by the district court." 29 U.S.C. § 186(c)(5)(B). However, the intent of the parties to create a 302(c)(5) trust is so patent, and the oversight so trivial and obvious, that we will entertain this appeal as though the missing provision were in fact recited in the trust agreement.
 
 
 7
 The district court found that a second ground existed for the appointment of an umpire, wholly apart from the dictates of the LMRA. The trust agreement states that an umpire may be appointed whenever the trustees come to a deadlock on "any question" save those "in connection with the interpretation or enforcement of any collective bargaining agreement." The trial court reasoned that because the drafters of the trust agreement explicitly excluded some matters from arbitration, they would also have explicitly excluded the arbitration of trust amendments had they so desired. The court found that arbitration of the amendments in deadlock was thus justified by the terms of the trust agreement. The second ground relied upon by the district court is not founded upon any federal statute. It is basically one of contract interpretation under the laws of Colorado, where the trust agreement was executed and accepted.
 
 
 8
 Although some courts have assumed broad equity jurisdiction over all aspects of 302(c)(5) trusts, most have held that primary federal court jurisdiction is limited by the terms of the LMRA. Associated Contractors of Essex County v. Laborers International Union of North America, 559 F.2d 222 (3d Cir. 1977); Bowers v. Ulpiano Casal, Inc., 393 F.2d 421 (1st Cir. 1968); Blassie v. Kroger Co., 345 F.2d 58 (8th Cir. 1965); Burroughs v. Board of Trustees, 398 F.Supp. 168 (N.D.Cal.1975), aff'd, 542 F.2d 1128 (9th Cir. 1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). We cannot find anything in the LMRA's selective correction of certain abuses in the management of union welfare trust funds that authorizes federal courts to engulf matters of local contract law. We thus adopt the majority view. It then follows that interpretation of a 302(c)(5) trust agreement under state law, apart from the terms of the LMRA, does not furnish an independent basis for federal court jurisdiction. However, in the instant case we will consider the state claim together with the federal claim under the doctrine of pendent jurisdiction, inasmuch as both claims are derived from "a common nucleus of operative fact," the federal issue is a substantial one, and judicial economy and the parties' convenience suggest that the claims be tried in one proceeding. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Hanraty v. Ostertag, 470 F.2d 1096 (10th Cir. 1972). See Snider v. All State Administrators, Inc., 481 F.2d 387 (5th Cir. 1973), cert. denied, 415 U.S. 957, 94 S.Ct. 1484, 39 L.Ed.2d 571 (1974).
 
 I.
 
 9
 The employer trustees argue the LMRA does not require that an umpire be allowed to decide whether a 302(c)(5) trust agreement shall be amended. They contend the amending of a trust agreement is not an act of trust fund "administration" as the word is used in the LMRA; that "administration" refers only to day-to-day trust fund management; and that a 302(c)(5) trust agreement may, therefore, lawfully provide that disputes over proposed amendments to the trust agreement are non-arbitrable. We believe that this is a substantial contention.
 
 
 10
 The union trustees urge us to confer upon the word "administration" a broad meaning. They argue that under the LMRA, an umpire must be allowed to break a deadlock on any matter which the trustees themselves would have power to decide, including a decision to amend, and that a 302(c)(5) trust agreement which provided otherwise would be unlawful. We observe that by thus arguing, the employee trustees in effect condemn their own acts. In 1965, when the trust agreement before us now was prepared, the union trustees agreed that umpires could not decide matters in connection with the interpretation or enforcement of any collective bargaining agreement. It would seem that the union trustees did not then view these as matters of administration, even though the trustees clearly would have the power to determine an employer's obligations to make contributions to the fund under its collective bargaining agreement, and to enforce those obligations when the need arose. There is nothing in this record indicating that the union trustees have attempted to remove the restrictive provision. It remains a part of the trust agreement.
 
 
 11
 The union trustees' current position was impliedly rejected by Judge Doyle of this Court, then presiding as a federal district judge, in Bath v. Pixler, supra. There, the trustees agreed to terminate the trust, but disagreed as to which course of action would be lawful under the trust agreement and the the LMRA. But for the deadlock, the trustees likely would have made the decision. The Court, however, refused to appoint an umpire, contrasting "legal controversy" and "the practical administration of the trust." Bath v. Pixler, supra, at 635.
 
 
 12
 The distinction between ordinary and extraordinary matters made in Bath v. Pixler, supra, and by appellees in the trust agreement before us, is, we believe, valid. We need not attempt to draw the line, but simply recognize that one exists. The danger in allowing an umpire to determine the legal effect of a particular provision in a trust agreement is that the balance of rights and duties struck by union and employer representatives may very likely be upset by mistake contrary to the original understanding of the parties. The union trustees hope to upset the balance here, and there is nothing subtle about their attempt. They would rewrite the agreement over the united protests of the employer trustees. Thus, this is not a matter for an umpire. Whatever else may be meant by trust fund "administration," the term does not include decisions to amend or not amend a 302(c)(5) trust agreement.
 
 
 13
 The appellees contend that their position is supported by decisions of the Second Circuit. In Barrett v. Miller, 276 F.2d 429 (2d Cir. 1960) the court said that the phrases "deadlock on the administration of such fund" and "deadlock upon any question coming before the Trustees for decision" mean the same thing. In Singleton v. Abramson, supra, the court followed Barrett in a case directly in point with the case at bar. The trustees in Singleton were empowered to amend the agreement, but had deadlocked on the adoption of one amendment. The court appointed an umpire to break the deadlock.
 
 
 14
 The district court in the instant case agreed with the union trustees that the Singleton result reflected the intent of Congress. "(N)eedless strife would result if the dispute were not resolved one way or the other." Ader v. Hughes, D.Colo. 75-A-1020, memorandum and order, at 6 (emphasis in original). The union trustees admit that there is little discussion of the LMRA's deadlock provision in the legislative history, but nevertheless direct our attention to the remarks of Senator Ball characterizing the umpire as "an impartial trustee." II Legislative History of the Labor-Management Relations Act of 1947 at p. 1304 (1948) (comment of Senator Ball). The appellees argue that as another "trustee," the umpire would have the authority accorded other trustees, including the authority to amend if the trust agreement so provided.
 
 
 15
 An umpire is not, of course, a "trustee," any more than a trial judge is a "thirteenth juror." The characterization begs the critical question of when an impartial person must be allowed to assume a trustee-like role for the limited purpose of breaking a deadlock. The statute gives the answer: whenever the deadlock is over a matter of trust fund administration. The union trustees do not convince us that Congress considered amendment of a trust agreement to be an administrative matter. On the contrary, if Congress wanted to reduce harmful quarreling between unions and management, the employer trustees' interpretation of the LMRA is the most persuasive. We are not dealing with a dispute as to proper disbursement policy on a question not anticipated by the parties (Mahoney v. Fisher, 277 F.2d 5 (2d Cir. 1960)), or a matter left open to the discretion of the trustees by the terms of the trust agreement. Petition of Feldman, supra. Such a dispute demands to be resolved "one way or the other" because there is no agreement to start with. Here, the union and employer trustees crafted by consensus the trust agreement as it now reads. That which the parties thought basic to their relationship and to the governance of the trust has been incorporated into the structure, and in a form that can be readily operated upon by the courts under established principles of contract and equity. Amendment is possible if one union and one employer trustee will agree to act in concert. The process demands accommodation. The amendment process offered by the union trustees demands only that one side take its chances with an umpire, and succeed. The eventual result: possibly no trust agreement, but a collection of unilateral clauses euphemistically called an "agreement."
 
 
 16
 Section 302 of the LMRA was meant to curb "the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." Arroyo v. United States, 359 U.S. 419, 426, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959). The statute requires a strong employer presence on the board of trustees. The employer trustees have charged that the amendments proposed by the union trustees would favor the unions at the expense of management. Whether the charge is true or not, it certainly is worthy of careful consideration. "The starting point for analysis must be the candid recognition that the relationship between employer and employee trustees of an employee benefit trust fund is quasi-adversarial in nature." Association Contractors v. Laborers, supra, at pp. 227-228. A success for the union trustees here would be a defeat for the legislative policy. We do not believe that Congress intended to see provisions born of agreement between management and labor replaced by possibly one-sided amendments that set one faction against the other. When proposals are made to change the instrument which has outlined where the parties shall stand in relation to each other, an impartial umpire is not a substitute for the veto of vigilant employer representatives.
 
 
 17
 We hold that the LMRA does not require that an umpire be allowed to break the deadlock involved in this case.
 
 II.
 
 18
 The district court found that the language of the trust agreement justified the appointment of an umpire. The trust agreement states that an umpire may be appointed whenever the trustees come to a deadlock on "any question" except those "in connection with the interpretation or enforcement of any bargaining agreement."Technically, we do not find a "deadlock" here as that word is defined in The American Heritage Dictionary : "A stoppage or standstill resulting from the opposition of two unrelenting forces." Neither of the parties contends the trustees have been crippled in managing the trust. The proposed amendments deal with matters covered in the trust agreement as written, which, though unsatisfactory to the union trustees, is not unworkable. The district court evidently understood the word "deadlock" in the same sense as Ballentine's Law Dictionary (3d ed.): "An even division of the directors of a corporation in voting." The parties must have assigned the word the same meaning in their trust agreement as the district court did, for, on appeal, they are silent on the point. The meaning of "deadlock" under the LMRA, however, is an interesting question which we need not now decide.
 
 
 19
 A court must give a written agreement that interpretation which was intended by the parties. Cave Construction, Inc. v. United States, 387 F.2d 760 (10th Cir. 1967); Charles Ilfeld Company v. Taylor, 156 Colo. 204, 397 P.2d 748 (1964). Under Colorado law, intent is determined from the agreement itself, if possible. Gardner v. City of Englewood, 131 Colo. 210, 282 P.2d 1084 (1955). The trust agreement stated that all questions were arbitrable, with some exceptions that were made explicit. Questions of amendment were not excepted. The court found the parties' intention in harmony with the natural meaning of the words in the agreement. The court was not clearly erroneous. Fed.R.Civ.P., rule 52, 28 U.S.C.; Volis v. Puritan Life Ins. Co., 548 F.2d 895 (10th Cir. 1977).
 
 
 20
 The legality of the amendments were not an issue before the district court. The parties did not make them an issue. The amendment dealing with employer trustee appointment is an attempt at union participation in the choice of an employer representative. Such participation has been forbidden elsewhere as contrary to the scheme of the LMRA. See Associated Contractors v. Laborers, supra; Quad City Builders Association v. Tri City Bricklayers Union No. 7, AFL-CIO, 431 F.2d 999 (8th Cir. 1970). Without the benefit of arguments on the question, however, we are not in a position to judge the legality of the proposed amendments.
 
 
 21
 WE AFFIRM.
 
 
 
 *
 Of the District of Kansas, sitting by designation