**James C. ENIX, et al., Plaintiffs,**

v.

**Guy BURRELL, et al., Defendants.**

**No. C-3-82-016.**

United States District Court,
S.D. Ohio, W.D.

June 10, 1983.

John R. Doll, Dayton, Ohio, for plaintiffs.

Robert T. Dunlevey, Jr., Dayton, Ohio, for defendants.

DECISION AND ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFFS' MOTION SUSTAINED; DEFENDANTS' MOTION OVERRULED; FURTHER PROCEDURES SET

RICE, District Judge.

Plaintiffs have brought suit in this Court, under § 502 of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, and § 302(c) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c), requesting the appointment of an umpire to arbitrate a dispute between the trustees of an employee pension trust fund. Both Plaintiffs (Doc. # 9) and Defendants (Doc. # 10) have moved for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons set out below, Plaintiffs' motion is sustained, while Defendants' motion is overruled. Further procedures for counsel to follow are established.

I.

The parties agree that the relevant facts, material to the pending motions, are uncontested. The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local Union No. 162 ("Union") and the Dayton Association of Plumbing Contractors, Inc. ("DAPC") entered into a Trust Agreement in 1964. Plaintiffs herein are the three trustees appointed by the Union, while Defendants are the three trustees appointed by DAPC. Under the Agreement, the trustees adopted a pension plan in 1965, which plan has been the subject of several amendments.

The current version of the Trust Agreement (verified copy attached to Doc. # 9, Ex. 1) provides that each member of the DAPC and the Union will contribute to the pension fund, "as may be required" under the respective collective bargaining agreements. Agreement and Declaration of

Trust, Art. II. Said Agreement also provides, *inter alia,* that three trustees will each be appointed by the Union and DAPC, Art. V, § 1, and that they shall be

charged with the administration of the Pension Fund and shall have all such powers as may be necessary to discharge their duties hereunder, including, but not by way of limitation, the power to adopt regulations for the conduct of their affairs not inconsistent with this agreement, to interpret and construe this Agreement, to determine all questions of eligibility and of the status and rights of participants and others hereunder, to determine the amount deemed to have been contributed to the Pension Fund by any Employer on account of any Employee, and, in general, to decide any dispute arising hereunder, and in all such cases their determination shall be final and conclusive unless otherwise herein expressly provided.

Art. V, § 13. Finally, the Agreement states that the trustees may alter and amend the Pension Fund and the Agreement itself. Art. III, § 6; Art. VI. Analogous provisions in the Pension Plan (current version, verified copy attached to Doc. # 19, Ex. 1) contain identical or similar language.

At a meeting on December 28, 1981, the Union trustees moved to retroactively increase the formula for calculating future service credits under the Pension Plan. A tie resulted when the motion was voted on, with the Union trustees voting for, and the DAPC trustees voting *against,* the motion. Two of the Union trustees then presented a "notice of deadlock" at the meeting, and same was mailed to the Union and the DAPC. At the meeting, the trustees agreed to allow their respective attorneys to choose an arbitrator to decide the "deadlocked" issue, pursuant to the trust agreement. Shortly thereafter, however, the DAPC trustees withdrew from this agreement, and Plaintiffs filed suit in this Court, alleging that, under the above facts, they were entitled to have this Court appoint an arbitrator to decide the deadlocked issue, pursuant to § 302(c) of the LMRA. In

their answer, Defendants denied liability, and also counterclaimed on the grounds that (1) Plaintiffs had failed to properly discharge their duties under the Plan, as required by 29 U.S.C. § 1104, and (2) Plaintiffs, by their acts, violated the common law of Ohio.

Pursuant to the Court's Order (Doc. # 7), the parties filed cross motions for summary judgment on the issues raised in the Plaintiffs' complaint.

II.

Where, as here, the parties acknowledge that there exist no genuine issues of material fact, the Court can rule on the cross motions for summary judgment, and enter judgment for one of the movants as a matter of law. Fed.R.Civ.P. 56(c); *Stewart v. Dollar Federal Savings & Loan Assoc.,* 523 F.Supp. 218, 220 (S.D.Ohio 1981).

Section 302 of the LMRA places restrictions on financial transactions by employers and Union officials. Subsection 302(c) lists certain exceptions to these rules, provided that, with regard to payments to trust funds:

the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office. . . .

29 U.S.C. § 186(c)(5)(B).[1] It is undisputed that the Trust Agreement and Pension Plan described above are agreements made pursuant to, and complying with, § 186(c)(5)(B).

In support of their motion, Plaintiffs argue that, in the words of § 186(c)(5)(B), a "deadlock on the administration" of the Pension Plan has occurred, and that the trustees have failed to agree as an "impartial umpire" to decide the dispute. In contrast, Defendants argue that (1) no effective notice of deadlock was given under the provisions of the Trust Agreement, (2) no "deadlock" exists, since the working of the Pension Plan has not been "crippled," and (3) the issue in dispute is not a matter of "ordinary" trust administration, and thus should not be decided by an arbitrator.

For the following reasons, the Court finds Defendants' arguments to be without merit.

## A. LACK OF NOTICE OF DEADLOCK

Article V, § 10, of the Trust Agreement states, *inter alia,* that any two trustees can call a meeting to select an arbitrator, (whenever a deadlock occurs), and written notice of a deadlock must be sent to the Union and *all* employers. Defendants vigorously argue that these conditions were not met, in that the Union trustees did not call a separate meeting to select an arbitrator, and, by only contacting the DAPC, failed to inform all the employers. Defendants conclude that this case should be dismissed, and the Plaintiffs required to exhaust these procedures prior to another court suit. Plaintiffs concede the failure to precisely follow the above procedures. However, they argue that a *separate* meeting was unnecessary, since all the principals

were in place, that notice to the DAPC served to notify the employers, and that any such procedural errors were waived by Defendants when they, initially, agreed to consider selecting an arbitrator.

■ The Court finds this debate to be irrelevant. While Plaintiffs have apparently failed to follow the notice procedures of the Trust Agreement, nothing in § 186(c)(5)(B) requires that any such procedures be exhausted before suit is permitted in federal court. In interpreting the meaning of said section, this Court must initially consider and follow the language of the statute enacted by Congress, unless there is legislative history to the contrary. *Associated General Contractors v. California State Council of Carpenters,* —— U.S. ——, 103 S.Ct. 897, 904, 74 L.Ed.2d 723 (1983); *Bread Political Action Committee v. FEC,* 455 U.S. 577, 578, 102 S.Ct. 1235, 1236, 71 L.Ed.2d 432 (1982). The statute *does* require that the Pension Plan establish a procedure for an umpire to break deadlocks. But the provision simply does not mention a "notice" of deadlock, or any procedures related thereto. Significantly, Defendants have cited no case law or legislative history (nor has this Court discovered any) in support of their position.[2] This case involves the application of a statutory provision, *not* the application of a contract. Finally, the Court agrees with Plaintiffs that any procedural errors could, presumably, be raised by Defendants in the arbitration proceeding. *Cf. John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) (procedural questions can be determined by arbitrator in suit under § 301 of the LMRA, 29 U.S.C. § 185).

---

**1.** While Plaintiffs also cited § 502 of ERISA in their complaint, they did not further rely on that provision in their memoranda on the pending motions. Since the Court finds that Plaintiffs are entitled to relief under the LMRA, it is unnecessary to decide the applicability, if any, of ERISA to the facts of this case. *See Fase v. Seafarers Welfare and Pension Plan,* 589 F.2d 112, 116 (2d Cir.1978).

**2.** In their Memoranda Contra, doc. # 12, p. 4, Defendants did cite one case, *Singleton v.*

*Abramson,* 336 F.Supp. 754, 760 (S.D.N.Y. 1971), in support of their position. That case, like this one, involved a suit under § 186(c)(5)(B). The court therein found that plaintiffs' suit was deficient since they had failed to satisfy one of the requirements of the statutory provision; no deficiency with respect to a strictly contractual requirement was mentioned. Accordingly, *Singleton* does not support Defendants' position.

■ Admittedly, § 186(c)(5)(B) states that resort to federal court is only permissible when the trustees have failed to agree to the appointment of an arbitrator "within a reasonable length of time ...." That language, of course, does not command adherence to procedural requirements in the Trust Agreement or Pension Plan. Moreover, a "reasonable length of time" *did* elapse before suit was brought in this Court. The dispute herein arose late in December of 1981; suit was filed on January 28, 1982. The passage of nearly a month in time, coupled with the impasse on the issue (created when the DAPC trustees charged their position, as noted above), constitutes a "reasonable length of time" based on the facts and circumstances of this lawsuit.

## B. LACK OF A DEADLOCK

Article V, § 10, of the Trust Agreement defines "deadlock" as whenever "a proposal, nomination, motion, or resolution made and seconded by a Union Trustee or by an Association Trustee is not adopted or defeated by [a] vote" of the trustees. Given the tie vote on the proposal to raise benefits, Plaintiffs argue that such a "deadlock" has come about. In contrast, Defendants, relying on *Ader v. Hughes,* 570 F.2d 303, 309 (10th Cir.1978), argue that no "deadlock", as that word is used in the statute, has occurred, since the parties herein do not contend that the tie vote has "crippled [the trustees] in managing the trust." *Id.*

At the outset, the Court agrees with Defendants that, for the reasons set out above, the definition of "deadlock" contained in the Trust Agreement has little, if any, bearing on the proper definition of that word in the statute. However, Defendants are not ultimately correct on this point. In *Ader,* the Court observed that "deadlock", as used by a Trust Agreement and interpreted by the District Court therein, could take on one of two meanings: either a "crippling" stoppage of work, or, as defined in *Ballen-*

tine's *Law Dictionary,* "[a]n even division of the directors of a corporation in voting." 570 F.2d at 309. The Court added: "The meaning of 'deadlock' under the LMRA, however, is an interesting question which we need not now decide." *Id.*

■ This Court holds that "deadlock", as used in the statute, can be given the latter meaning alluded to in *Ader.* An accepted canon of statutory construction is that words should typically be given their plain, "ordinary" meaning. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982).[3] Admittedly, the dictionary definition of "deadlock" refers to both meanings cited to in *Ader. See, e.g.,* Webster's Third New International Dictionary 580 (1976, unabridged). However, in the context of the statute, the word is used, at least implicitly, to signify the existence of a "dispute" which calls for an arbitrator. Labor arbitration, typically, concerns particularized disputes under a management/labor contract, not wholesale stoppage of the working of the contract itself. *See* R. Gorman, Basic Text on Labor Law 541–43 (1976). Moreover, all the published decisions concerning § 186(c)(5)(B), some of which are cited elsewhere in this opinion, implicitly adopted the "tie-vote" construction of deadlock. In short, it appears that "deadlock" can encompass *both* meanings referenced in *Ader:* a "tie-vote" on one particular dispute, *or* a broader dispute (presumably, initiated by a tie-vote on some matter) which cripples the management of the Pension Plan as a whole.

■ Accordingly, the Court agrees with Plaintiffs that a statutory "deadlock" occurred in this case. *See also, Sandman v. Sheet Metal Workers Local 141,* 705 F.2d 865 at 866–867 (6th Cir.1983) (per curiam) (§ 186(c) case, referring to tie vote by trust fund trustees as a deadlock).

**3.** Unfortunately, "[t]here is little discussion of the LMRA's deadlock provision in the legislative history ...." *Ader v. Hughes, supra,* 570

F.2d at 308. Therefore, the Court must rely on the plain meaning of the statute itself.

## C. DEADLOCK DID NOT CONCERN ADMINISTRATION OF PENSION PLAN

Finally, the Court addresses Defendants' most forceful position. They argue that the dispute did not concern a "deadlock on the administration" of the Pension Plan, as that phrase is used in § 186(c)(5)(B), since the dispute over eligibility benefits is an "extraordinary" matter, not committed to the ordinary, day-to-day discretion of the trustees. Plaintiffs contend that "administration" should not be so narrowly defined and that, in any event, the dispute *is* committed to the discretion of the trustees.

A literal reading of § 186(c)(5)(B) does not compel the distinction between different types of administration which Defendants rely upon. However, case law has developed that distinction, based on the legislative history and purposes of the statute. In *Ader,* the court pointed out that the Trust Agreement therein stated that impartial umpires "could not decide matters in connection with the interpretation or enforcement of any collective bargaining agreement." 570 F.2d at 307. It followed that "administration" of the pension plan could *not* include attempts to rewrite or amend the trust agreement. *Id.* The court added that this conclusion was supported by the "quasi-adversarial" relationship between union and employer trustees on a pension fund; the union trustees, by forcing "deadlocks" on "one-sided amendments" to be decided by an arbitrator, would defeat the purpose of requiring consensus, through collective bargaining, in drafting the *original* agreement. *Id.* at 308. *Accord, NLRB v. Amax Coal Co.,* 453 U.S. 322, 336, 101 S.Ct. 2789, 2797, 69 L.Ed.2d 672 (1981). In emphasizing the "extraordinary" nature of the decision the union trustees wished to bring out of the adversarial posture, the *Ader* court added that "[w]e are not dealing with . . . a matter left open to the discre-

tion of the trustees by the terms of the trust agreement." 570 F.2d at 308. Other courts have adopted the "extraordinary"/"day-to-day management" distinction exposued in *Ader,* and have only permitted the latter disputes to go to arbitration under § 186(c)(5)(B). *See Farmer v. Fisher,* 586 F.2d 1226, 1230 (8th Cir.1978); Brauer, *Limitations on Use of an Impartial Umpire to Resolve Deadlocked Disputes Between Taft-Hartley Trustees,* 30 Lab.L.J. 741, 745–46 (1979).[4] *See also Sandman, supra,* 705 F.2d at 867–868; *Donaldson v. Archiable,* Case No. C–1–81–565 (S.D.Ohio Jan. 8, 1982) (Spiegel, J.), slip op. at 6–7.

Applying these principles to the within matter, it becomes clear that the dispute over the amount of certain pension funds due retirees is not an "extraordinary" matter, but is committed to the "day-to-day management" of the trustees. As pointed out above, the Trust Agreement herein vests power in the trustees "to determine all questions of eligibility and of the status and rights of participants," and to "alter and amend" the Agreement and Pension Fund. Thus, this matter appears to be one, in the words of *Ader,* "left open to the discretion of the trustees by the terms of the trust agreement." The change which the Union trustees desire, as this Court understands it, relates to the *amount* of benefits due participants, which falls under their "eligibility and . . . status and rights" to funds, in the words of the Agreement. It is not the type of "extraordinary" matter which should be left to collective bargaining.

The case would be closer if the issue involved *contributions* to the Pension Plan. Those matters, unlike *benefits* paid to Plan participants, are "extraordinary" items governed by the collective bargaining agreement. In contrast, the matter and amount of future service benefits, at issue herein, is addressed in some detail in Art. III, § 3 of

---

**4.** In light of the holdings and reasoning of this more recent authority, the Court agrees with Defendants that it would be improper to rely on earlier cases which were, apparently, willing to equate "deadlock on the administration" with *any* issue coming before trustees for a

decision. *See, e.g., Barrett v. Miller,* 276 F.2d 429, 430 n. 1 (2d Cir.1960); *Singleton v. Abramson, supra,* 336 F.Supp. at 758. *See also, Ader v. Hughes, supra,* 570 F.2d at 307 (discussing *Barrett* and *Singleton* decisions).

the Pension Plan. This Court, as did the *Ader* court, does "not attempt to draw the line" between extraordinary and day-to-day management, "but simply recognize[s] that one exists." 570 F.2d at 307. The within matter falls on the "day-to-day management" side of that somewhat indistinct line. Indeed, there would seem to be few things more relevant to the ordinary administration of a Pension Plan than the amount of benefits paid to participants. *Accord, Donaldson v. Archiable, supra,* slip op. at 7.

For these reasons, the Court finds Defendants' third and final position not to be well taken.

### III.

Based on the aforementioned reasoning, the Court sustains Plaintiffs' motion for summary judgment, and overrules Defendants' motion for summary judgment. However, the Court declines to award attorney's fees to Plaintiffs under § 502(g) of ERISA, 29 U.S.C. § 1132(g), given that it was unnecessary to consider ERISA as a basis for the rulings herein. *See* footnote 1, *supra.* The Court grants the parties fourteen (14) days to submit to the Court a list of individuals, together with a recitation of qualifications, who would be appropriate for consideration for appointment as an impartial umpire in this case.