RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

PATRICK BAKER,

  *Plaintiff*,

JAMES BUZZIE; CHRIS VLK; RICHARD J. SAWHILL,

  *Plaintiffs-Appellants*,

  *v.*

IRON WORKERS LOCAL 25 VACATION PAY FUND, et al.,

  *Defendants*,

MICHAEL RANDICK; DENNIS AGUIRRE; WAYNE COFFELL,

  *Defendants-Appellees*.

⎫
⎪
⎪
⎪
⎪
⎬ No. 20-1946
⎪
⎪
⎪
⎪
⎭

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:19-cv-12963—Terrence George Berg, District Judge.

Decided and Filed:  May 28, 2021

Before:  SUTTON, Chief Judge; DAUGHTREY and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Gary C. Ankers, LITTLER MENDELSON, P.C., Detroit, Michigan, Jay Inman, LITTLER MENDELSON, P.S.C., Lexington, Kentucky, Alan B. Carlson, LITTLER MENDELSON, P.C., San Jose, California, for Appellants.  Matthew I. Henzi, ASHERKELLY, PLLC, Southfield, Michigan, for Appellees.

—————————————

**OPINION**

—————————————

SUTTON, Chief Judge.   Several construction companies and one union established a trust fund to subsidize employee vacations.  Six trustees oversaw the fund.  A disagreement arose over whether the trust needed to amend one of its tax returns.  Three of the trustees (the ones selected by the companies) filed a lawsuit in federal district court, seeking to obtain authority to amend the tax return.  The three union-appointed trustees intervened, arguing that the dispute belongs in arbitration.  The court agreed and dismissed the complaint.  We affirm.

I.

In 1962, the Great Lakes Fabricators and Erectors Association (a group of construction companies) and Iron Workers Local 25 (a union representing construction workers) created a trust funded by contributions from the employers.  The trust fund subsidizes vacations for employees who participate in the employee vacation plan.  A board of trustees manages the vacation fund, with the employers and the union each choosing three of its six members.  The Employee Retirement Income Security Act of 1974 permits the trust fund, and it counts as a tax-exempt entity under the tax code, which means that it does not have to pay taxes on its investment earnings.  *See* 26 U.S.C. § 501(c)(9).

In 2017, the three employer trustees reviewed the vacation plan to ensure that the fund complied with the tax code.  After this review, they became convinced that two features of the plan jeopardized the fund's tax-exempt status:  the frequency with which employees receive distributions and the ability of the employees to use their vacation money for non-vacation purposes.  The employer trustees notified the union trustees, who informally agreed in 2019 to change the terms of the plan.

It soon came time for the trust to file its annual tax return.  As part of the process, one of the employer trustees had to certify that the fund did not face any potential liability for taking contestable tax positions.  Believing the board would soon change the plan to resolve these two uncertainties, he certified the return.

That belief proved to be unduly optimistic.  At the board's quarterly meeting in March 2019, the employer trustees moved to change the vacation plan to bring it into compliance with the tax code, presumably by reducing the amount of vacation available and preventing employees from using vacation funds for other purposes.  The union trustees refused, concluding that the tax code did not require any change.  The matter never came to a vote.

The employer trustees responded that the trust needed to amend its tax return to reflect uncertainty about the fund's tax-exempt status.  They put the matter on the agenda for the June quarterly meeting, but none of the union trustees attended the meeting.  At the September board meeting, an employer trustee moved to amend the tax return, but the chair of the board, a union trustee, rejected the motion as procedurally improper.

The employer trustees sued the trust fund in federal district court, claiming they had a fiduciary duty under ERISA to ensure that the fund complied with the tax code.  They sought a declaratory judgment and an injunction compelling the trust to amend its tax return.

The union trustees intervened.  They filed a motion to dismiss, arguing that the dispute should be arbitrated.  The district court agreed and dismissed the case.

II.

The Labor Management Relations Act forbids employers from directly giving money to unions, 29 U.S.C. § 186(a), a bar designed to prevent bribery and corruption, *Arroyo v. United States*, 359 U.S. 419, 425–26 (1959).  An exception allows an employer and a union to operate a trust fund for the benefit of employees, just like the one here.  *See* 29 U.S.C. § 186(c)(5)(A).  Without this exception, the vacation trust fund would not exist.

As the price for permitting trusts of this sort, the Act requires them to follow several rules.  The trust's managing board must have an even number of trustees, half hailing from the employer, half from the union.  *Id.* § 186(c)(5)(B).  Anticipating that even-numbered boards might deadlock from time to time, the Act requires the trust agreement to provide that an arbitrator will resolve any "deadlock on the administration of such fund."  *Id.*

The trust agreement meets these requirements. It has a six-member board. It requires three trustees to be selected by the employers and three by the union. And it provides that an arbitrator will resolve any deadlocks. A covered deadlock, the agreement says, may arise in one of two ways. The first occurs when "a proposal, nomination, motion or resolution made by any Trustee is not adopted by a majority vote (unless the same has been defeated by a majority vote)." R.20-2 at 12. The second occurs when "a quorum is lacking at a meeting duly called." *Id.* A quorum requires four trustees to gather, two from each side.

The deadlock provision applies to this dispute. As a matter of orientation, we must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). With or without this doubt-resolving presumption, this dispute generated both types of deadlocks.

Take the provision that applies when a proposal fails to receive a majority vote. In March 2019, the employer trustees proposed changing the vacation plan to remedy the noted tax uncertainties. Whatever else happened when it came to this proposal, one thing is clear. It was "not adopted by a majority vote" or for that matter "defeated by a majority vote." The same problem happened six months later. At the September 2019 meeting, the employer trustees moved to amend the tax return again. That motion also failed to receive a majority vote, as the chairman ruled it out of order.

Now take the provision that applies when a meeting lacks a quorum. The union trustees, the complaint alleges, failed to attend the June 2019 quarterly meeting, which deprived the board of a quorum. A deadlock generated by the lack of a quorum amounts to a covered dispute.

Whether we look in one direction or the other, it is clear that the employer trustees and the union trustees deadlocked on the proper response to the employer trustees' concerns about the fund's tax-exempt status and on whether to file an amended tax return. Under the trust agreement, that meant that arbitration, not federal court, was the mechanism for resolving the dispute.

Apart from this defect in the lawsuit, there is another problem with it. ERISA makes these claims premature. Before invoking ERISA in federal court, as the employer trustees do in

their complaint, they had an obligation to exhaust remedies under the plan.  *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).

The trust agreement, as shown, laid out a path for the employer trustees to follow in resolving this deadlock.  They needed to "notify the remaining Trustees in writing that a deadlock exist[ed]."  R.20-2 at 12.  Then they needed to meet with the union trustees to appoint an "impartial umpire" to resolve the dispute.  *Id.* at 13.  Only if those talks fell through could "any of the Trustees" go to federal court, and then only for it to appoint a neutral umpire.  *Id.* Nothing suggests that the employer trustees could circumvent this process by going straight to the district court and asking it to resolve the underlying dispute over whether the trust needed to file an amended tax return.

The point of this exhaustion requirement is to reduce frivolous lawsuits, minimize costs, prevent premature judicial intervention into decisions by the board of a trust fund, and allow trustees to correct errors of their own making.  *Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994).  Not one of these objectives is missing from this dispute.

The Second Circuit and the Third Circuit have handled similar cases in similar fashion. Each has held that disappointed trustees may not bring ERISA claims without first availing themselves of deadlock arbitration provisions.  *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986); *Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 122–23 (3d Cir. 2002).

The employer trustees make several counterarguments, each unconvincing.

They insist that no deadlock occurred because their proposal to amend the tax return never received a vote.  But the trust agreement does not require a merits vote for a deadlock to exist.  It requires only that a proposal "is not adopted by a majority vote."  A motion shot down on procedural grounds "is not adopted by a majority vote" no less than one rejected on the merits.  Plus, the lack of a quorum at the June quarterly meeting qualifies as a deadlock anyway. Otherwise, any time one side of a dispute preferred federal court to an arbitrator, it could resort to procedural gamesmanship—say by denying a quorum—to prevent a vote.

*Enix v. Burrell* does little to advance a different approach. 572 F. Supp. 1364 (S.D. Ohio 1983). It did not hold that a deadlock requires a tie vote; it merely rejected an argument that a deadlock requires more than a tie vote. *Id.* at 1368. Nothing in the opinion says that the trust agreement classified a lack of a quorum as a deadlock. Nor did that case recognize the presumption in favor of arbitrability, a presumption that has grown more salient over the last four decades.

The employer trustees claim that an exception to ERISA's exhaustion requirement applies to these claims. Here is how the exception works. ERISA requires trustees and other fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries," to do so with reasonable "care, skill, prudence, and diligence," and to do so "in accordance with the documents and instruments" of the plan. 29 U.S.C. § 1104(a). By failing to amend the tax return, the argument goes, the union trustees breached their duty to operate the plan "in accordance with" the trust agreement, which in turn required that the trustees operate the trust in a way that complies with the tax code. This kind of breach, the argument concludes, qualifies for an exception to the exhaustion requirement, which permits "ERISA plan participants or beneficiaries" to sue for a breach of a statutory fiduciary duty in federal court without "exhaust[ing] internal remedial procedures." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017).

But this argument mischaracterizes the complaint and the proceedings below. The complaint did not allege a breach of fiduciary duties—not by the union trustees, not by anyone else. Just the opposite is true. The complaint alleges that the employer trustees' own fiduciary duties compelled them to file the action to maintain the trust's compliance with tax laws. Confirming the point, the employer trustees represented to the district court that their claims were "not directly adversarial to the [union trustees] or to the Fund." R.9 at 17. They never amended their complaint once the union trustees intervened, and the complaint continued to state a non-adversarial claim against the trust alone.

Our decision in *Hitchcock* also does not permit this kind of lawsuit. The case did not involve an agreement to arbitrate. It also did not involve trustees. Although we said that "ERISA plan participants or beneficiaries do not need to exhaust internal remedial procedures

before proceeding to federal court when they assert" a breach of fiduciary duty, *Hitchcock*, 851 F.3d at 564, we have never said the same for trustees, who face the Act's additional obstacle, *see Kilkenny*, 288 F.3d at 124.

The employer trustees seek aid from *Fujikawa v. Gushiken*, which concluded that one trustee could sue other trustees under ERISA for a breach of a fiduciary duty without submitting the dispute to arbitration. 823 F.2d 1341, 1346 (9th Cir. 1987). In that case, a single union trustee sued the employer trustees after they refused to sign checks for beneficiaries, allegedly in an attempt to maximize the employer's bargaining power. *Id.* at 1343–44. The biggest quandary raised by *Fujikawa* is whether it remains good law. The decision relied on *Amaro v. Continental Can Co.*, 724 F.2d 747, 750 (9th Cir. 1984), which held that a party can sue for a violation of ERISA regardless of the existence of an arbitration agreement. *Fujikawa*, 823 F.2d at 1345. But the Ninth Circuit later overruled *Amaro* as inconsistent with intervening Supreme Court precedent. *See Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1112 (9th Cir. 2019). *Fujikawa* differs materially from our case anyway. It never discussed whether a deadlock existed, and it concluded that the deadlock arbitration provision did not apply because the other trustees had stopped serving the interests of the beneficiaries and had started serving the interests of the employers. *Fujikawa*, 823 F.2d at 1346. By any fair measure, that is not this case.

The employer trustees add that this case should not go to arbitration because whether the tax laws require the fund to amend its return amounts to a legal dispute, not one over the administration of a trust. But arbitrators resolve legal questions and mixed law and fact questions all the time. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also Am. Fed'n of Television & Radio Artists, Cleveland Local v. Storer Broad. Co.*, 745 F.2d 392, 398 (6th Cir. 1984) ("Our national labor policy favoring the resolution of labor disputes by arbitration 'eliminates searching judicial review of the factual and legal accuracy of arbitrators' findings.'" (quoting *Local Union 59, Int'l Brotherhood of Elec. Workers v. Green Corp.*, 725 F.2d 264, 268 (5th Cir. 1984))), *amended on denial of reh'g* (Nov. 29, 1984).

That leaves one wrap-up question: Did the district court correctly dismiss the case under Civil Rule 12(b)(1) (for lack of jurisdiction) as opposed to Civil Rule 12(b)(6) (for failure to state a claim)? The union's motion to dismiss invoked both rules. Because an arbitration agreement

presents a reason to dismiss under 12(b)(6), not under 12(b)(1), the court should have dismissed the case for failure to state a claim. *See Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014). We nonetheless may correct the label on our own and affirm all the same. *Id.*

We affirm.