David E. SANDMAN, Trustee, et al., Plaintiffs,

v.

LOCAL UNION NO. 141 SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, et al., Defendants.

No. C–1–81–393.

United States District Court, S.D. Ohio, W.D.

Jan. 13, 1982.

---

Arnold Morelli, Cincinnati, Ohio, for plaintiffs.

Harold G. Korbee, Cincinnati, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPEIGEL, District Judge:

This matter is before the Court for consideration of plaintiff's motion for summary judgment (doc. 8), defendant's motion for summary judgment (doc. 9) and plaintiff's reply memorandum (doc. 11). After reviewing the pleadings, the foregoing motions and memoranda, and the affidavits and exhibits filed by the parties, the Court concludes that there is no genuine issue of material fact to be decided in this litigation, that summary judgment should be granted to the plaintiff, and that defendant's motion for summary judgment should be denied, for the reasons hereinafter set forth.

This litigation concerns the issue of whether an impartial umpire should be appointed by the Court to resolve a dispute between the employer trustees and the union trustees who comprise the Board of Trustees of the Sheet Metal Workers Local 141 Apprentice Training Trust Fund (the Fund). The Fund was provided for by the Collective Bargaining Agreement between the Sheet Metal Contractors Association and other employers in the sheet metal industry in this area (Association) and Local Union 141 Sheet Metal Workers International Association (Union).

The Fund was created and governed by an agreement and declaration of trust executed July 14, 1967 between the Association and the Union (Agreement). Under the terms of the Agreement, the employers of the Association agreed to make specified payments to the Fund to be used for the purpose of educating and training apprentices in accordance with the provisions of the Agreement. The Fund is administered by six trustees, three appointed by the employers and three appointed by the Union. The issue over which they are in dispute is a resolution proposed by the employer trustees which was voted for by the three employer trustees and voted against by the three Union trustees. This resolution states:

All applying employers shall be granted one apprentice for each block of 6,400 hours of work accumulated by any and all journeymen who worked for the applying employer in the twelve month period preceding the application of the employer. Included in that 6,400 hours shall be the work time of journeymen who are members of Local 141 or sister locals in the Sheet Metal Workers International such as travelers.

The employer trustees allege that since the vote was tied, a deadlock among the trustees existed with regard to the administration of the Fund. The Union trustees refused to participate in the selection of an impartial umpire to resolve this deadlock; thus, plaintiffs have turned to the Court for relief.

A Court is empowered to appoint an umpire to resolve a dispute among Board members who are trustees of the Union fund, such as the instant one, in the event the employer and the employee groups deadlock on the administration of such fund, there are no neutral persons empowered to break such deadlock, and the two groups fail to agree on an impartial umpire to decide such dispute within a reasonable length of time. 29 U.S.C. § 186(c)(5)(B). The Union trustees argue, however, that this Court should not appoint an umpire because no "deadlock" exists, the dispute among the trustees is not on the "affairs of the trust," and the disputed issue is one which, under the Collective Bargaining Agreement between the parties, must be submitted to the grievance procedures contained in that Agreement. Thus, resolution of these issues necessitates an examination

of the documents by which the parties are governed and the history of the relations between the parties regarding the administration of the Trust Fund.

The pertinent articles of the Trust Fund agreement are as follows.

Article 3 states that the "purposes of the trust fund shall be to provide, pursuant to the program inaugurated by the trustees, a training and education program for apprentices ...".

Article VI sets out the powers and duties of the trustees. Under Section 1(b) they are to formulate and administer a plan for the exclusive purposes of the training and education of apprentices, adopt such rules and regulations as are consistent with and necessary to the performance of their duties, and exercise such powers and duties as are consistent with and may be reasonably necessary to carry out the purposes of the plan. Section 1(c) allows the trustees to amend or change the plan so as to best effectuate its purposes, with copies forwarded to the Union and the employers for purposes of adequate publicity.

Article X of the Agreement provides that the trustees be members of the Joint Apprentice Committee. Section 2. Concurrence of a majority of the trustees shall be required for any action taken at a meeting, and concurrence of all trustees is required for action taken without a meeting. Section 7. Section 8 of Article X states:

In the event of a deadlock among the trustees on any of the affairs of this trust, an impartial umpire to decide the matter in dispute shall be appointed by consent of all of the trustees, and if the trustees have not selected an impartial umpire ... any one or more of the trustees may petition [this court] for the appointment of an impartial referee or umpire to decide such dispute.

Article XIII of the Agreement states that the provisions of the Agreement shall be liberally construed in order to promote and effectuate the establishment and operation of the Apprentice Training Program. Section 2, Article XIII. Article XIV provides for amendment of the Agreement by the trustees so long as the amendment is approved by the Employers' Association and the Union.

On June 14, 1974, the Joint Apprentice Committee executed the Sheet Metal Apprenticeship Standards (Standards) as its plan to supplement and clarify the provision of the Agreement with regard to the Fund. The Standards required and received approval by the Union and the Employer Association. Full administration of the Standards was vested in the Joint Apprenticeship Committee (JAC), which was to be comprised of the six trustees who also served as trustees for the Trust Fund. Standards, Section 2. Under Section 3(1) of the Standards, the JAC responsibility was to determine the need for new apprentices. Section 5(2) of the Standards states that the "JAC may place apprentices with employers at the rate of one (1) apprentice for each four (4) members of Local # 141 on the employers' payroll." Section 9 provides:

The employer agrees that the apprentice-journeymen ratio under these standards shall be no more than one (1) apprentice for each four (4) employed journeymen members of Local # 141.

Section 10 of the Standards goes on to state that if the 4–1 journeymen to apprentice ratio is decreased, the JAC may request the return of the apprentice.

Section 12(D) of the Standards allows the JAC to establish such additional rules and regulations governing its administrative procedure as required, and (E) provides that nothing in the Standards shall in any way abridge the full autonomy of the JAC to supervise and administer its local program. Section 14 of the Standards allows their amendment at any time by a two-thirds vote by action of the JAC subject to approval by the Employer Association and the Union. Appendix A to the Standards consists of an affirmative action plan for the JAC.

The history of the JAC operations reflect an almost continual state of impasse between Union trustees and employer trustees on the number of apprentices which may be

indentured under Section 9 of the Standards. Union trustees have repeatedly refused to approve the number of apprentices requested by the members of the Association and the employer trustees; likewise, employer trustees have refused to approve the number of apprentices requested by the Union trustees, which is usually considerably less than the number requested by the employer trustee.

As early as 1973, Union and employer trustees deadlocked over the number of new apprentices to be appointed. Use of the Collective Bargaining Agreement grievance machinery was resorted to to solve the impasse. Although the trustees, as members of the JAC, were found to be in violation of the Union Agreement and were directed to indenture sufficient apprentices to honor all valid requests as per the Trust Agreement and the Union agreement, the trustees remained unable to do so because of apparent disagreements over the interpretation of which requests were valid under the ratio imposed by Sections 5 and 9 of the Standards. Between 1975 and 1977, only three apprentices were indentured. The number of apprentices to be indentured each year has remained an issue of contention with frequent deadlocks between Union and employer trustees of the JAC up to the present time. Interestingly enough, neither side has ever resorted to the impartial umpire provisions of the Agreement, made mandatory by 28 U.S.C. § 186(c)(5)(B) to resolve these deadlocks until this time. However, the result has been that the Trust does not effectively function according to its purpose.

Finally, at a meeting of the JAC on March 16, 1981, the employer trustees proposed the contested resolution, by means of a motion, to adopt a definition clarifying when an apprentice should be indentured. The vote on the resolution deadlocked.

One inescapable fact emerges from our examination of the affidavits, agreements, minutes, correspondence, and other material submitted by the parties, and that is that the purpose of the establishment of the Joint Apprenticeship Training Program for Local # 141 has been frustrated since December, 1973. An examination of the Sheet Metal Workers Apprenticeship Standards discloses that it is part and parcel of the Affirmative Action Plan for the Cincinnati Area Sheet Metal Workers. In order for the Affirmative Action Plan to meet its goals, it is necessary for the Apprenticeship Training Program to function properly, as generally one can only become a journeyman sheet metal worker after having completed serving as an apprentice.

In view of the Court's evaluation of the situation, it finds little merit in defendant's objection to the appointment of an impartial umpire to resolve this dispute on the basis that no deadlock exists. Rather, the evidence shows the parties are deadlocked on plaintiff's motion to clarify the language of Sections 5 and 9, just as they had been deadlocked on previous occasions regarding the number of apprentices which may be indentured. This is just one more example in a continuum which illustrates the impasse which the trustees have encountered in the appointment of apprentice classes and the indenturing of apprentices which has made administration of the trust ineffectual.

◼ Defendants' second contention is that the dispute among the trustees is not "on any of the affairs of this trust" as required by Article X, Section 8 of the Agreement. To be a dispute over an "affair of the trust", the issue must be one which the trustees have the authority to decide under the trust agreement. *Mahoney v. Fisher*, 277 F.2d 5 (2nd Cir.1960); *Singleton v. Abramson*, 336 F.Supp. 754 (S.D. New York 1971).

Defendants argue that adoption of the resolution is beyond the scope of the trustees' authority under the Trust Agreement since it constitutes an amendment to the Collective Bargaining Agreement and the Trust Standards.

Article XI, Section 3 of the Collective Bargaining Agreement executed June 1, 1980 by the Association and the Union states that:

It is hereby agreed that the employer shall apply to the Joint Apprentice Committee and the Joint Apprentice Committee shall grant apprentices on the basis of one (1) apprentice for each four (4) journeymen regularly employed throughout the year.

This language parallels that of Section 5(2) of the Trust Standards as well as Section 9 with the exception that the Collective Bargaining Agreement does not require, as both Sections do, that the "regularly employed journeymen" be members of Local # 141.

Under the language of the proposed resolution, one apprentice may be indentured to an employer for each block of 6,400 hours accumulated by the work of journeymen who have worked for the applying employer over a twelve-month period. Roughly translated, such figures equal four journeymen, each working 1,200 hours per year or thirty, forty-hour weeks out of a possible fifty-two. This resolution is consistent with the Collective Bargaining Agreement in that it does not require that the journeymen only be members of Local # 141. Thus, rather than seeking to amend the Collective Bargaining Agreement, the resolution, in the Court's opinion, attempts to clarify the basis on which the 4–1 ratio shall be applied and to make the terms of the JAC Standards of the Trust Agreement, specifically Sections 5 and 9, consistent with the language of the Collective Bargaining Agreement, by deleting the requirement of journeyman membership in Local # 141. Such an amendment of the JAC Standards of the Trust Agreement is clearly within the trustee's power. Article VI, Section 1(c) of the Agreement. Article VI allows the trustees to amend or change the Standards so as to best effectuate the purpose of the Trust. Indeed, Article VI of the Agreement vests the sole discretion of administering the Trust in a workable manner, including the adoption of such rules and regulations as are necessary to the performance of their duties, with the trustees. Clearly amendment of the Standards to conform to the Collective Bargaining Agreement and proposing regulations by which those Standards, such as the 4–1 ratio, may be implemented, are central to the effective administration of those Standards and the Trust. Accordingly the Court has no difficulty finding that the proposed resolution is within the trustee's power and concerns the affairs of the Trust. This case is distinguishable from *Ader v. Hughes,* 570 F.2d 303 (10th Cir.1978) cited by defendants, in that in *Ader,* when the Trust Agreement was prepared, the Union trustees agreed that umpires could not decide matters in connection with the interpretation of any Collective Bargaining Agreement. In the instant case, no such factual situation is present. Rather, the trustees are empowered to amend the Standards, Article VI, Section 1(c) of the Agreement, and the Agreement itself if approved by the Union and the Association. Article XIII of the Agreement. And, if such action were not initiated by the trustees where the Fund is concerned, there would be no one else to do so. Thus, we are dealing with a matter left open to the discretion of the trustees by the terms of the Trust Agreement. *See Ader v. Hughes,* 570 F.2d at 308. Further, it is a matter which has been in dispute and resulted in blocking effective implementation of the most basic purpose of the Trust; *i.e.,* the trustees ability to administer the Trust according to its purpose which is to indenture apprentices for training. Accordingly, the Court finds that this is a proper situation to appoint an impartial umpire to resolve the dispute. 29 U.S.C. § 186(c); *Singleton v. Abramson,* 336 F.Supp. 754 (S.D. New York 1971).

Accordingly, plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied. The Court will grant the parties fourteen (14) days to submit to the Court a joint list of suggested individuals who they agree would be appropriate for consideration to be appointed the impartial umpire in this case.

SO ORDERED.